UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEURIG GREEN MOUNTAIN, INC.,<br>a Delaware corporation,<br><br>         Plaintiff,<br><br>     v.<br><br>GLOBAL BARISTAS U.S., LLC,<br>a Washington limited liability corporation, and<br>GLOBAL BARISTAS, LLC,<br>a Washington limited liability corporation,<br><br>         Defendants. | No. 18-cv-0095 |

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

For its Complaint against Defendants Global Baristas, LLC and Global Baristas U.S., LLC (together "Global Baristas"), Plaintiff Keurig Green Mountain, Inc. ("Keurig") states as follows:

1. Keurig brings this action against its licensee Global Baristas—which operates retail coffee locations and sells licensed product under Keurig's TULLY'S brand—for injunctive relief and damages resulting from Global Baristas' breach of the parties' Trademark License Agreement, violation of the Federal Lanham Act, and violation of related state and common law claims that arise out of the same operative facts.

## THE PARTIES

2. Keurig is an industry leader in specialty coffee and coffee brewers, recognized for its award-winning coffees and innovative brewing technology. Keurig markets its KEURIG® brewers and its K-CUP® pods used with its brewers through distributors, retail, and direct

channels for use in offices, homes, and hotel rooms in North America.  Its K-CUP® pods are produced under a variety of brands, including those owned by Keurig and by third-parties.

3.     Keurig is a Delaware corporation with its principal place of business located at 33 Coffee Lane, Waterbury, Vermont 05676.

4.     Defendants Global Baristas, LLC, and Global Baristas U.S., LLC are each Washington limited liability corporations with their head offices located at 2003 Western Avenue, Suite 300, Seattle, Washington 98121.  Upon information and belief, Defendant Global Baristas, LLC manages Defendant Global Baristas U.S., LLC.

## JURISDICTION AND VENUE

5.     This court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1331, 28 U.S.C. § 1332, 28 U.S.C. § 1338, and 28 U.S.C. § 1367.

6.     This court has personal jurisdiction because the parties consented to jurisdiction in this Court pursuant to the parties' Trademark License Agreement.

7.     Venue is proper in this District because the parties prospectively agreed that any disputes under the parties' Trademark License Agreement shall be venued in any court in New York.

## FACTUAL BACKGROUND

8.     On July 21, 2014, Keurig and Global Baristas entered into a trademark license agreement (hereafter the "Trademark License Agreement") (a true and correct copy of which is attached hereto as Exhibit A).

## THE TRADEMARK LICENSE AGREEMENT

9.     As set forth on the Exhibits to the Trademark License Agreement, Keurig

owns approximately 85 applications and registrations worldwide for marks



incorporating the word TULLY'S (hereafter, "the TULLY'S Marks"), and

many of those marks in the United States are incontestably registered, such

as the one to the right.

10.     In addition, Keurig also owns the business names Tully's, Tully's Roaster of Fine

Coffee, and Bellaccino (together with the TULLY'S Marks, the "Licensed Marks").

11.     Keurig uses the TULLY's Marks for coffee



sold in K-CUP® pods usable in KEURIG® coffee brewers and

on packages for the pods, such as those shown to the right.

12.     Keurig also uses the TULLY's Marks for coffee sold by food service providers,

such as cafeterias, and bagged coffee sold in grocery stores.

13.     Under the Trademark License Agreement and as set forth more fully therein,

Keurig granted Global Baristas an exclusive, non-transferable (except as provided in the

Trademark License Agreement) license to last for an initial term of ten (10) years to use the

Licensed Marks to sell TULLY'S coffee (defined as "Licensed Products" in the Trademark

License Agreement) at Licensed Retail Stores (as defined in the Trademark License Agreement),

as well as related merchandise bearing the Licensed Marks (hats, tee shirts and the like), and to

maintain a website (www.tullyscoffeeshops.com) (hereafter, the "Website") for the purpose,

among others, of providing information to consumers.  By the terms of the Trademark License

Agreement, Global Baristas could use the Licensed Marks on or in connection with the Licensed Products only as provided for in the License Agreement.

14.     The Trademark License Agreement provides that Keurig should receive a copy of any sublicenses granted by Global Baristas.

15.     Further, Global Baristas may not assign or delegate any obligations under the Trademark License Agreement without Keurig's approval.

16.     Under the Trademark License Agreement, Global Baristas is permitted to source the Licensed Products through suppliers other than Keurig ("Secondary Vendors") with the pre-approval of Keurig and subject to Keurig's quality and service standards.

17.     The Trademark License Agreement provides that for Licensed Products sourced from a Secondary Vendor, Global Baristas shall pay Keurig a royalty fee equal to $250,000 per year (the "Royalty Fee"), starting with the calendar year beginning on January 1, 2016.

18.     Under the Trademark License Agreement, Keurig retained control over the use and promotion of the TULLY'S Marks.  For example, the License Agreement provides that the "parties acknowledge and agree that Keurig shall have the absolute right to approve [Global Baristas'] use of and manner of use of the Licensed Marks in any Promotional and Advertising Material."  Trademark License Agreement, ¶ 8(a).

19.     "Promotional and Advertising Material" is defined in the Trademark License Agreement to mean labels, packaging, advertising brochures, catalogues and other written or graphic material, all advertising, including television, radio, newspaper and other media advertising, signage, stationary, store and point-of-sale displays, and all other materials upon which any of the Licensed Marks are placed.

20.    Paragraph 8 of the Trademark License Agreement requires Global Baristas to submit to Keurig and obtain approval for use of all Promotional and Advertising Material used by Global Baristas bearing the Licensed Marks, including modifications of previously approved Promotional and Advertising Material.

21.    Additionally, the Trademark License Agreement states that Global Baristas shall not alter the Licensed Marks, develop derivatives, or new variations of the Licensed Marks, or combine the Licensed Marks with other marks, designs, names, styles words or branding, without the prior written consent of Keurig.

22.    The Trademark License Agreement allows Keurig to conduct inspections and audit Global Baristas' activities under the Agreement.

23.    Finally, the Trademark License Agreement provides that if Global Baristas fails to maintain at least twenty (20) Benchmark Stores (i.e., standalone Licensed Retail Stores) in North America, Global Baristas' exclusive license rights shall revert to non-exclusive rights in North America.  Further, if Global Baristas fails to maintain at least ten (10) Benchmark Stores in North America, Keurig has the right to terminate the Trademark License Agreement.

24.    The Trademark License Agreement may be terminated by either party upon written notice to the other party in the event of any breach of a material obligation under the Agreement, which the receiving party fails to cure within thirty (30) days after receiving such notice.

25.    The Trademark License Agreement requires that immediately upon termination, Global Baristas must cease all sale of any Licensed Products and use of the Promotional and Advertising Material, except for limited, defined uses.  The parties agreed that irreparable damage would occur if the Trademark License Agreement were breached.

## GLOBAL BARISTAS' WRONGFUL ACTIONS

26.     As described in the following paragraphs, Global Baristas has breached the Trademark License Agreement.

27.     The Trademark License Agreement provides for payment of an annual Royalty Fee of $250,000.  Keurig invoiced Global Baristas on November 22, 2016, for the 2016 Royalty Fee.  That invoice remains unpaid and outstanding.  Keurig invoiced Global Baristas on February 15, 2017, for the 2017 Royalty Fee.  That invoice also remains unpaid and outstanding.

28.     On October 27, 2017, via Federal Express Keurig sent Global Baristas a formal notice of breach and demand for payment (the "Notice Letter").  A true and correct copy of the Notice Letter and the relevant invoices are attached as Exhibit B.  The Notice Letter was delivered on October 30, 2017.  Global Baristas' default was not cured within thirty (30) days after its receipt of the letter and has yet to be cured.  As a result of Global Baristas failure to cure its breach within thirty (30) days after receipt of the Notice Letter, the Trademark License Agreement terminated of its own terms on December 1, 2017.

29.     Upon termination of the Trademark License Agreement, Paragraph 11(C) provides that Global Baristas shall immediately (i) cease the sale of any Licensed Product licensed under the Agreement, other than in the ordinary course of business during a period not to exceed 120 days from the date of termination (the "Wind-down period"); and (ii) cease use of all promotional and advertising materials that are in Global Baristas' possession or control, other than labels, containers, and packing.  The Wind-down period expires on March 31, 2018.

30.     Furthermore, as is expressly permitted under the Trademark License Agreement, in 2017 Keurig performed an audit of Global Baristas' operations.  In the audit, Keurig

discovered that Global Baristas was actively engaged in conduct in violation of the Trademark

License Agreement in the following ways:  Instead of using

the authorized TULLY's logo shown above, Global Baristas is using unauthorized logos such as that shown to the right, on stores.



31.    Moreover, Global Baristas is using unauthorized logos on Promotional and Advertising Material such as that shown to the right.



32.    Global Baristas began this unauthorized use without notifying or consulting Keurig as required under the Trademark License Agreement.  Global Baristas' use of unauthorized logos violates the terms of the Trademark License Agreement and constitutes a breach of the Trademark License Agreement and the Lanham Act.

33.    In addition, the Trademark License Agreement requires Global Baristas to "prominently display at each Licensed Retail Store a sign stating that (i) Licensee (or its sublicensees) is an independent owner of such Licensed Retail Store operating the Licensed Retail Store under a license from Keurig, (ii) Licensee (or its sublicensees) is not affiliated with Keurig in any other manner, and (iii) Keurig has no interest in the Licensed Retail Store."  The audit revealed that Global Baristas was not displaying this required sign in any audited location, in breach of the Trademark License Agreement.

34.    The October 27, 2017, Notice Letter identified the following breaches of the Trademark License Agreement:  (i) Global Baristas' failure to pay the Royalty Fees for 2016 and

2017 and (ii) Global Baristas' nonconforming brand, promotional, and marketing uses.   The

Notice Letter also requested confirmation of Global Baristas' performance of its obligations

under the Trademark License Agreement, including informing Keurig of any sublicenses granted

by Global Baristas, any additional Secondary Vendors, and any assignments or delegations of

obligations under the Trademark License Agreement, as well as confirmation of the number of

Benchmark Stores Global Baristas is maintaining.   As required under the Trademark License

Agreement, Global Baristas had 30 days to cure all defaults.

35.     The cure period expired on November 30, 2017, and to date Global Baristas failed

to cure any of the defaults and has failed to otherwise respond to Keurig's October 27,

2017 letter.

36.     Because Global Baristas failed to timely cure the breach, the License Agreement

terminated by its terms as of December 1, 2017.   As of that date, Global Baristas was required to

immediately cease use of Keurig's Licensed Marks and business names, with the exception for

any authorized Wind-down activities, which must be completed on or before March 31, 2018.

## COUNT I
## (Violation of 15 U.S.C. § 1114(a))

37.     Keurig adopts and re-alleges the preceding paragraphs as if fully restated herein.

38.     Keurig is the owner of the United States trademark registrations for the TULLY'S

Marks in U.S. Registration Nos. 2369199, 3399874, 2976090, 2976089, 2934857, 2947750,

2927948, 2934899, 2936078, 2908497, 2787759, 2936468, 2908498, 2806015, 2906503,

2928741, 2980788, 2934768, 2906504, 2912974, and 2910741, all of which are valid, subsisting,

and incontestable.   Keurig also is the owner of the United States trademark registrations for the

TULLY'S Marks in U.S. Registration Nos. 3769395, 3782982, 3782981, 3876310, 3810894,

3889182, 4090420, and 3990703, all of which are valid and subsisting.  Copies of the certificates of registration are attached hereto as Exhibit C.

39.     Global Baristas' actions, described above, constitute unauthorized use in commerce of a registered mark in connection with the sale and advertising of goods and such use is likely to cause confusion or to cause mistake or to deceive as to the origin of the goods sold by Global Baristas.

40.     As such, Global Baristas' actions violate 15 U.S.C. § 1114(a).

41.     Global Baristas' actions have caused, and unless restrained by the Court, will continue to cause Keurig and the goodwill associated with Keurig's protected Licensed Marks serious and irreparable injury.  Keurig is entitled to injunctive relief enjoining Global Baristas from any unauthorized use of the Licensed Marks.  Keurig has no adequate remedy at law because the harm it is suffering is difficult to quantify, such that damages alone cannot fully compensate Keurig for its loss.

42.     Global Baristas' actions have caused damages to Keurig in an amount to be proven at trial.  Global Baristas' infringement is willful, and damages should be trebled as permitted by applicable law.

## COUNT II
### (Violation of 15 U.S.C. § 1125(a))

43.     Keurig adopts and re-alleges the preceding paragraphs as if fully restated herein.

44.     Global Baristas' actions described above, including but not limited to its use of the Licensed Marks on store signage not approved by Keurig, its use of the Licensed Marks in advertising and promotions not approved by Keurig, and ongoing use of the Licensed Marks in advertising and/or promotions, constitute use in interstate commerce of a word, term, name,

symbol, or device, or any combination thereof, and a false designation of origin, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Global Baristas with Keurig, or deceive as to the origin, sponsorship, or approval of Global Baristas' goods and commercial activities by Keurig, in violation of 15 U.S.C. § 1125(a).

45.     Global Baristas' actions have caused, and unless restrained by the Court, will continue to cause Keurig and the goodwill associated with Keurig's protected Licensed Marks serious and irreparable injury.  As such, Keurig is entitled to injunctive relief enjoining Defendant from any use of the Licensed Marks, except in the very limited and explicitly enumerated ways as set forth in the Trademark License Agreement.  Keurig has no adequate remedy at law because the harm it is suffering is difficult to quantify, such that damages alone cannot fully compensate Keurig for its loss.

46.     Global Baristas' actions have caused damages to Keurig in an amount to be proven at trial.  Global Baristas' infringement is willful, and damages should be trebled as permitted by applicable law.

## COUNT III
### (Violation of 15 U.S.C. § 1125(d))

47.     Keurig adopts and re-alleges the preceding paragraphs as if fully restated herein.

48.     Upon termination of the Trademark License Agreement, Global Baristas' rights to use the Licensed Marks as authorized by the Trademark License Agreement ceased, except in very limited and explicitly enumerated ways as set forth in the Trademark License Agreement.

49.     Global Baristas' conduct, including its continued operation of the tullyscoffeeshops.com after the termination of the Trademark License Agreement, is without the consent of Keurig and constitutes a violation of 15 U.S.C. § 1125(d).

50.     Keurig is entitled to an order enjoining Global Baristas from continued operation of the Website and requiring Global Baristas to cause the Website to be taken down from the Internet.

### COUNT IV
### (Violation of Delaware Uniform Deceptive Trade Practice Act
### Del. Code Ann. tit. 6, § 2531, et seq.)

51.     Keurig adopts and re-alleges the preceding paragraphs as if fully restated herein.

52.     The Trademark License Agreement at issue is governed by the substantive law of Delaware.

53.     Global Baristas' use of the Licensed Marks is likely to cause confusion, mistake, or deceive the consuming public as to the affiliation, connection, or association of Global Baristas' goods with Keurig.

54.     Global Baristas' actions are likely to cause confusion as to the source or sponsorship of Defendant's goods.

55.     Global Baristas' actions constitute false representation and false designation of origin in violation of Del. Code Ann. tit. 6, § 2531.

56.     Keurig has been damaged by Global Baristas' actions in an amount to be proven at trial.

### COUNT V
### (Common Law Unfair Competition)

57.     Keurig adopts and re-alleges the preceding paragraphs as if fully restated herein.

58.     Global Baristas' actions constitute unfair competition under the common law.

59.     Keurig has been damaged by Global Baristas' actions in an amount to be proven at trial.

## COUNT VI
### (Breach of the License Agreement)

60.     Keurig adopts and re-alleges the preceding paragraphs as if fully restated herein.

61.     Global Baristas actions described above, including but not limited to its failure to pay Keurig its owed annual Royalty Fees and its use of store signage, advertising, and promotions that have not been approved by Keurig, violate the Trademark License Agreement.

62.     As a proximate result of Global Baristas' breach of the Trademark License Agreement, Keurig has suffered damages in amount exceeding $75,000, exclusive of interest and costs.

WHEREFORE, Keurig Green Mountain, Inc. respectfully request this Court enter:

A.      Judgment in favor of Keurig on each of its claims against Global Baristas, LLC, in an amount to be proven at trial;

B.      A permanent injunction against Global Baristas, LLC, restraining it, its officers, agents, representatives, employees, parents, subsidiaries, related companies, licensees, successors, assigns, and all persons acting in concert or participation with Global Baristas, LLC from:  (1) directly or indirectly infringing Keurig's Licensed Marks; (2) engaging in acts or activities to unfairly compete with Keurig; and (3) otherwise engaging in any acts or conduct that would cause consumers to erroneously believe that Global Baristas' goods are somehow sponsored by, authorized by, licensed by, approved by, or in any way associated with Keurig or any of its brands, including the TULLY'S Marks;

C.    Judgment in favor of Keurig for its reasonable attorneys' fees, expenses, and costs incurred in this action; and

D.    Any other and further relief the Court deems just and equitable.


Dated:  New York, New York           THE LAW OFFICE OF
        January 5, 2018              RUSSELL D. MORRIS PLLC

                         By: _____
                                     Russell D. Morris

                             545 Fifth Avenue, Suite 640
                             New York, New York 10017
                             Tel:  (212) 380-1619
                             Email:   rmorris@russellmorrislaw.com

                                      -and-

                             Cynthia A. Moyer (to be admitted *pro hac vice*)
                             Laura L. Myers (to be admitted *pro hac vice*)
                             Barbara Marchevsky (to be admitted *pro hac vice*)

                             FREDRIKSON & BYRON, P.A.
                             200 South Sixth Street, Suite 4000
                             Minneapolis, Minnesota 55402-1425
                             Telephone:  (612) 492-7000
                             Facsimile:  (612) 492-7077
                             Email:   cmoyer@fredlaw.com
                                      lmyers@fredlaw.com
                                      bmarchevsky@fredlaw.com

                             *Attorneys for Plaintiff Keurig Green Mountain, Inc.*