UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEURIG GREEN MOUNTAIN, INC., a Delaware corporation,<br><br>         Plaintiff,<br><br>vs.<br><br>GLOBAL BARISTAS U.S., LLC, a Washington limited liability company, and GLOBAL BARISTAS, LLC, a Washington limited liability corporation<br><br>         Defendants. | CIVIL ACTION NO. 18-CV-0095 |

**DEFENDANTS, GLOBAL BARISTAS U.S. LLC AND GLOBAL BARISTAS, LLC'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' AMENDED COUNTERCLAIMS AND STRIKE DEFENDANTS' SECOND AFFIRMATIVE DEFENSE**

Submitted by:

EINBINDER & DUNN, LLP
Michael Einbinder (ME-3930)
Mackenzie Dimitri (MD-4684)
*Attorneys for Defendants*
112 Madison Avenue, FL. 8
New York, New York 10018
Tel: (212) 391-9500
Fax: (212) 391-9025
ME@ed-lawfirm.com
MLD@ed-lawfirm.com

## Table of Contents

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 2

ARGUMENT .......................................................................................................................... 4

    I.    **Standard of Review** ................................................................................................ 4

    II.    **Counterclaim I Sufficiently Alleges Violations of the Registration State Statutes** ..... 6

        a.    **Plaintiff Violated the Registration State Statutes by Not Registering an FDD and Failing to Provide an FDD to Global Baristas** ................................................ 6

            i.    **Plaintiff Violated the California Franchise Investment Law** ............................ 6

            ii.    **Plaintiff Violated Michigan's Franchise Investment Law** ............................... 10

            iii.    **Plaintiff Violated the North Dakota and Rhode Island Franchise Laws** ........ 12

            iv.    **Plaintiff Violated Hawaii's Franchise Investment Law** .................................. 15

            v.    **Plaintiff Violated Virginia's Retail Franchising Act** ...................................... 16

        b.    **Global Baristas Counterclaims are Timely** ...................................................... 18

            i.    **The Counterclaims Were Brought Within California's Four-Year Period** ... 18

            ii.    **The Counterclaims Were Brought Within Hawaii's Seven-Year Period** ........ 19

            iii.    **Global Baristas is Entitled to Relief Under Washington's Franchise Investment Protection Act** ........................................................................ 20

    III.  **Count II of Global Baristas' Counterclaims Are Properly Pleaded** ......................... 21

        a.    **Plaintiff Violated Florida's Deceptive and Unfair Trade Practices Act** ............... 21

        b.    **Plaintiff Violated the New Jersey Consumer Frauds Act** ................................... 22

    IV.  **Count Three of the Counterclaims is Properly Plead** ............................................. 24

    V.    **Global Baristas Second Affirmative Defense Is Properly Asserted** .......................... 24

    VI.  **Conclusion** .............................................................................................................. 29

## Table of Authorities

### Cases

*2P Commercial Agency S.R.O. v. Familant,*
 No. 2:11-cv-652-FTM-29, 2012 WL 6615889 (M.D. Fla. Dec. 19, 2012) .............................. 22
*Ashcroft v. Iqbal,*
 556 U.S. 662, 129 S.Ct. 1937 (2009)................................................................... 4, 26
*Barnext Offshore, Ltd. v. Ferretti Group USA, Inc.,*
 No. 10-23869-CIV, 2012 WL 1570057 (S.D. Fla. May 12, 2012)..................................... 21, 22
*Bayerische Landesbank, New York Branch v. Aladdin Capital Management, LLC,*
 692 F.3d 42 (2d Cir. 2012)................................................................................. 8
*Bell Atlantic Corp. v. Twombly,*
 550 U.S. 544, 127 S.Ct. 1955 (2009) .............................................................. 4, 5
*Brader v. Minute Muffler,*
 914 P.2d 1220 (Wash. Ct. App. 1996) ................................................................ 25
*Burger King Corp. v. Austin,*
 805 F. Supp. 1007 (S.D. Fla. Oct. 9, 1992) ......................................................... 28
*Burger King Corp. v. Holder,*
 844 F. Supp. 1528 (S.D. Fla. Feb. 5, 1993) ......................................................... 28
*Cartier Int'l AG v. Motion in Time, Inc.,*
 No. 12 Civ. 8216(JMF), 2013 WL 1286975, at *3 (S.D.N.Y. Apr. 5, 2013)......................6
*Cellular Engineering, Ltd. v. O'Neill,*
 820 P.2d 941 (Wash. 1991)............................................................................. 25
*City of New York v. Fedex Ground Package System, Inc.,*
 314 F.R.D. 348 (S.D.N.Y. March 31, 2016)....................................................... 5, 26
*Comm'r v. Estate of Bosch,*
 387 U.S. 456, 87 S.Ct. 1776 (1967)................................................................... 12
*County Vanlines Inc. v. Experian Information Solutions, Inc.,*
 205 F.R.D. 145 (S.D.N.Y. Jan. 4, 2002)........................................................... 6, 27
*Crone v. Richmond Newspapers, Inc.,*
 384 S.E.2d 77 (Va. 1989)............................................................................... 17
*Degla Group for Investments, Inc. v. BoConcept USA, Inc.,*
 No. 2:09-cv-05278-FMC-AGRx, 2009 WL 10673164 (C.D. Cal. Oct. 15, 2006).................. 19
*Elhilu v. Quizno's Franchising Co., LLC,* 2:06-cv-077855-FMC-CTx,
 2008 WL 11338130 (C.D. Cal. Apr. 3, 2008) ..................................................... 19
*Elias v. Ungar's Food Products, Inc.,*
 252 F.R.D. 233 (D.N.J. 2008)......................................................................... 24
*Estee Lauder, Inc. v. Fragrance Counter, Inc.,*
 189 F.R.D. 269 (S.D.N.Y. Sept. 23, 1999) ........................................................... 5
*Forbes v. Joint Medical Products Corp.,*
 976 F. Supp. 124 (D. Conn. 1997)................................................................... 28
*Fruit v. Fancher,*
 242 P. 11 (Wash. 1926)................................................................................. 25
*Hacienda Mexican Rests. Of Kalamazoo Corp. v. Hacienda Franchise Grp., Inc.,*
 489 N.W.2d 108 (Mich. Ct. App. 1992) ............................................................. 11

*Hidalgo v. Johnson & Johnson Consumer Companies, Inc.*,
   148 F. Supp. 3d 285 (S.D.N.Y. Dec. 8, 2015) ................................................................. 5
*In re Merrill Lynch & Co., Research Reports Sec. Litig.*,
   218 F.R.D. 76 (S.D.N.Y. 2003) ....................................................................................... 5
*Int'l Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co., Inc.*,
   384 N.J. Super. 275, 894 A.2d 1136 (App. Div. 2006) ................................................. 23
*It's Just Lunch International LLC v. Nichols*,
   No. EDCV 06-1127-VAp, 2009 WL 10668457 (C.D. Cal. May 21, 2009) ...................... 10
*J&R Ice Cream Corp. v. California Smoothie Licensing Corp.*,
   31 F.3d 1259 (3d Cir. 1994) .......................................................................................... 23
*Jablon v. Dean Witter & Co.*,
   614 F.2d 677 (9th Cir. 1980) ......................................................................................... 19
*Kavky v. Herbalife Intern. of America*,
   359 N.J. Super. 497, 820 A.2d 677 (App. Div. 2003) ................................................... 23
*Kugler v. Koscot Interplanetary, Inc.*,
   120 N.J. Super. 216, 293 A.2d 682 (Ch. Div. 1972)..................................................... 23
*Lady of America Franchise Corp. v. Malone*,
   No. 05-61304-CIV, 2006 WL 7354110 (S.D. Fla. Feb. 13, 2006) ................................ 28
*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
   739 F.3d 45 (2d Cir. 2013).............................................................................................. 12
*Lobdell v. Sugar N' Spice, Inc.*,
   33 Wash. App. 881, 658 P.2d 1267 (1983)................................................................... 20
*McGowan v. Pillsbury Co.*,
   723 F. Supp. 530 (W.D. Wash. Mar. 13, 1989) ..................................................... 20, 21
*Millennium Communications & Fulfillment, Inc. v. Office of Attorney General, Dept. of Legal Affairs, State of Fla.*,
   761 So.2 1256  (Fla. 3d DCA 2000) .............................................................................. 22
*Morgan v. Air Brook Limousine, Inc.*,
   211 N.J. Super. 84, 510 A.2d 1197 (Law Div. 1986) ................................................... 23
*Nelson v. National Fund Raising Consultants, Inc.*,
   120 Wn. 2d 382, 842 P.2d 473 (1992).......................................................................... 20
*Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Management LLC*,
   595 F. 3d 86 (2d Cir. 2010)............................................................................................. 5
*Radiancy, Inc. v. Viatek Consumer Products Grp., Inc.*,
   No. 13-cv-3767 NSR, 2014 WL 4772340 (S.D.N.Y. Mar. 28, 2014), as amended (Apr. 1, 2014) ................................................................................................................................ 6
*Renaissance Cruises, Inc. v. Glassman*,
   738 So. 2d 436 (Fla. 4th DCA 1999) ............................................................................ 22
*Rutter v. BX of Tri-Cities, Inc.*,
   60 Wash. App. 743, 806 P.2d 1266 (1991).................................................................... 20
*Salcer v. Envicon Equities Corp.*,
   744 F.2d 935 (2d Cir. 1984)............................................................................................ 5
*State of New York v. United Parcel Service, Inc.*,
   160 F. Supp. 3d 629 (S.D.N.Y. Feb. 8, 2016)......................................................... 6, 27
*Stocco v. Gemological Institue of America, Inc.*,
   975 F. Supp. 2d 1170 (S.D. Cal. Sept. 24, 2013)......................................................... 10

*Styne v. Stevens*,
    26 Cal. 4th 42, 26 P.3d 343 (Cal. 2001) ................................................................ 25
*U.S. v. East River Housing Corp.*,
    90 F. Supp. 3d 118 (S.D.N.Y. March 2, 2015) ........................................... 6, 26, 27

## **Statutes**

Cal. Corp. Code § 31001…………………………………………………………………7
Cal. Corp. Code § 31013…………………………………………………………………8
Cal. Corp. Code § 31105…………………………………………………………………8, 9
Cal. Corp. Code § 31110…………………………………………………………… 7, 9, 18
Cal. Corp. Code § 31119…………………………………………………………… 7, 18
Cal. Corp. Code § 31300…………………………………………………………………18
Cal. Corp. Code § 31303…………………………………………………………………18
California Corp. Code., Title 4, Div. 5, § 3100 *et seq*…...………………………………3
Code of Virginia, Title 13.1, Chapter 8, § 13.1-557 ................................................ 3
Conn. Gen. Stat. Ann. § 42-133h..................................................................... 27
Fla. Stat. Ann. § 501.202 ...................................................................... 21, 22
Fla. Stat. Ann. § 501.203(7)................................................................................ 21
Fla. Stat. Ann. § 501.204(1)-(2)................................................................ 21
Fla. Stat. Ann. § 501.203(7)-(8)…………………………………………………………22
Fla. Stat. § 817.416 ................................................................................. 28
Florida Statutes Annotated, Chapter 501 Part II, § 501.201 ................................. 3
Haw. Rev. Stat. § 482E-3(a) .................................................................... 15
Haw. Rev. Stat. § 482E-3(a) and (c) ....................................................... 15
Haw. Rev. Stat. § 482E-4(a)(4) .............................................................. 15
Haw. Rev. Stat. § 482E-10.5(b)............................................................... 19
Hawaii Statutes & Rules, Title 26, Chapter 482E § 482e-1 *et seq*…...……………………3
Ind. Code § 23-2-2.5-2 ............................................................................. 28
Md. Code Ann., Bus. Reg. § 14-203(a)(2)................................................ 28
Mich. Comp. Laws § 445.1501 ................................................................ 12
Mich. Comp. Laws § 445.1504(1) ............................................................ 11
Mich. Comp. Laws § 445.1507a(1) ......................................................... 10
Mich. Comp. Laws § 445.1508(1) – (2) ................................................. 11
Michigan Compiled Laws Annotated, Chapter 445 § 445.1501 ......................... 3
Minn. Stat. Ann. § 80C.19 ....................................................................... 28
N.D. Cent. Code §§ 51-19-03 and 51-19-08........................................... 13
North Dakota Statute and Court Rules, Title 51 § 51-19-01 *et seq*…...…………………………3, 12
N.J. Stat. Ann. § 56:10-4........................................................................ 28
N.J.S.A. § 56:8-2........................................................................................ 23
N.Y. Gen Bus. Law § 681(12)(a)............................................................. 28
New Jersey Consumer Frauds Act, Title 56, Chapter 8 § 56:8-1 *et seq*…...………………………3
Or. Rev. Stat. § 650.020.......................................................................... 29
R.C.W. 19.100.020(1)............................................................................. 25
R.C.W. 19.100.080(1)............................................................................. 25
R.C.W. 19.100.220(3)............................................................................. 20
R.I. Gen Laws § 19-28.1-7....................................................................... 14

R.I. Gen Laws §§ 19-28.1-2 ................................................................................................ 13
R.I. Gen Laws §§ 19-28.1-5 and 19-28.1-8 ......................................................................... 13
Rhode Island's Franchise Investment Act, Title 19, Chapter 28.1 § 19-28.1 *et seq*..............3, 12
Va. Code Ann. § 13.1-559(B) ............................................................................................... 17
Va. Code Ann. § 13.1-560 ............................................................................................... 16, 18
Va. Code Ann. § 13.1-563 ..................................................................................................... 17
Va. Code Ann. § 13.1-564 .....................................................................................................18
Va. Code Ann. § 13.1-565 ...............................................................................................17, 18
Va. Code Ann. § 13.1-571 .............................................................................................. 17, 18
Wash. Rev. Code § 4.16.130 ................................................................................................. 20
Washington State Statute, Title 19, Chapter 19.100 *et seq*..............................................3

## Rules

Fed. R. Civ. P. 8(a)(2) ........................................................................................................... 4
Fed. R. Civ. P. 12(b)(6) .......................................................................................................... 5
Fed. R. Civ. P. 12(f) .................................................................................................. 5, 26, 29
Fed. R. Civ. P. 15(c)(1)(B) .................................................................................................. 18
Rule 8 ................................................................................................................................... 4

## Regulations

16 C.F.R. § 436.1 ................................................................................................................ 14
16 C.F.R. § 436.2 ........................................................................................................... 21, 23

## Other Authorities

A.B. 3061 ............................................................................................................................. 9

Defendants, Global Baristas U.S., LLC and Global Baristas, LLC (together, "Global Baristas"), respectfully submit this brief in opposition to Plaintiff Keurig Green Mountain Inc.'s motion to dismiss Defendants' amended counterclaims and strike Defendants' second affirmative defense.

## PRELIMINARY STATEMENT

The Court should deny Plaintiff's motion to dismiss Global Baristas' counterclaims and to strike Global Baristas' second affirmative defense because Global Baristas properly pleaded their counterclaims and asserted their second affirmative defense.  Plaintiff does not even cite the appropriate standards of law for its motion, and it fails to address the facts that were actually pleaded (and must be accepted as true for the purposes of this motion), and instead relies on its own mistaken interpretation of the applicability of the relevant laws to the licensing agreement that is the subject of this action.  Plaintiff's motion should be denied because the arguments it makes regarding the territorial limitations of the state franchise statutes it violated rely on a misinterpretation of the law and the facts alleged in the counterclaims.  Plaintiff also misreads the statutes of limitations in the California Franchise Investment Law, Hawaii's Franchise Investment Law, and Washington's Franchise Investment Protection Act it invokes to attempt to evade liability.[1]  Plaintiff does not even dispute the applicability of Washington law.

Plaintiff offered for sale and sold franchises in jurisdictions that have laws regulating the offer and sale of franchises.  Plaintiff did not comply with the legal requirements set forth under the laws cited in the amended counterclaims when it offered and sold franchises to Global Baristas.

---

[1] Plaintiff does not invoke the statutes of limitations in Connecticut, Florida, Illinois, Indiana, Maryland, Michigan, Minnesota, New Jersey, New York, North Dakota, Oregon, Rhode Island, South Dakota, Virginia or Wisconsin law.

1

Nothing in Plaintiff's motion refutes the fact that Plaintiff violated the Registration State Statutes and the Trade Protection Statutes (as those terms are defined below).  The motion should be denied.

## STATEMENT OF FACTS

Plaintiff filed a complaint against Global Baristas on January 5, 2018, alleging various causes of action related to Global Baristas, LLC's alleged non-compliance with the provisions of the Trademark License Agreement.  Global Baristas filed an amended answer which included counterclaims and the affirmative defense that is the subject of this motion.

Plaintiff and Global Baristas, LLC[2] entered into the "Trademark License Agreement" on July 21, 2014, which provides Global Baristas with a license to use Plaintiff's trademarks and service marks in connection with the retail sale of licensed products at licensed retail stores in every state in the United States.[3]  Global Baristas alleges that the Trademark License Agreement is a franchise agreement and Plaintiff offered and sold a franchise to Global Baristas, LLC. Counterclaims at ¶¶ 1 – 7.

This transaction violated the laws of the states of California, Connecticut, Florida, Hawaii, Indiana, Maryland, Michigan, Minnesota, New Jersey, New York, North Dakota, Oregon, Rhode Island, Virginia, and Washington. Counterclaims at ¶¶ 1 and 5.  Specifically, the laws required Plaintiff to register a franchise disclosure document ("FDD") and provide the registered FDD to Global Baristas prior to the execution of the franchise agreement.  Plaintiff asserts that it was not bound by the various state statutes regulating the sale of franchises based on its interpretation of the statutes' scope and statute of limitations provisions.

---

[2] Plaintiff made claims against Global Baristas U.S., LLC based on the Trademark License Agreement, which Global Baristas denied in their amended answer (Docket Entry 36).  Global Baristas U.S., LLC is not a party to the Trademark License Agreement; however, the counterclaims and affirmative defenses are asserted on behalf of both Global Baristas, LLC and Global Baristas U.S., LLC.

[3] In fact, the Trademark License Agreement grants Global Baristas a franchise "worldwide except Japan."

Count One of the counterclaims seeks either damages or rescission of the Trademark License Agreement in addition to costs, attorneys' fees, expert fees and treble damages for violations of all state laws relevant to the sale of a franchise, including (i) the California Franchise Investment Law, California Corporations Code, Title 4, Division 5, § 3100 *et seq.*; (ii) Hawaii's Franchise Investment Law, Hawaii Statutes & Rules, Title 26, Chapter 482E § 482e-1 *et seq.*; (iii) Michigan's Franchise Investment Law, Michigan Compiled Laws Annotated, Chapter 445 § 445.1501 *et seq.*; (iv) North Dakota's Franchise Investment Law, North Dakota Statute and Court Rules, Title 51 § 51-19-01 *et seq.*; (v) Rhode Island's Franchise Investment Act, Title 19, Chapter 28.1 § 19-28.1-1 *et seq.*; (vi) Virginia's Retail Franchising Act, Code of Virginia, Title 13.1, Chapter 8, § 13.1-557 *et seq.*; and (vii) the Franchise Investment Protection Act, Washington State Statute, Title 19, Chapter 19.100, *et seq.* (collectively, the "Registration State Statutes"). Plaintiff violated the Registration State Statutes by failing to register a franchise disclosure document ("FDD"), selling Global Baristas the franchise without having first registered an FDD, and selling Global Baristas the franchise without providing an FDD and all proposed agreements to Global Baristas prior to the sale of the franchise.

Count Two of the Counterclaims alternatively seeks rescission of the Trademark License Agreement, costs and attorneys' fees or damages, costs and attorneys' fees, as well as a refund of all Global Baristas money and treble damages for violations of all U.S. trade protection statutes in each state, including (i) the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes Annotated, Chapter 501 Part II, § 501.201 *et seq.* and (ii) the New Jersey Consumer Frauds Act, Title 56, Chapter 8 § 56:8-1 *et seq.* (collectively, the "Trade Protection Statutes"). Plaintiff violated the Trade Protection Statutes by engaging in unfair and deceptive practices in conducting trade or commerce and by employing unconscionable tactics in connection with selling goods or

3

services, specifically by failing to provide Global Baristas with an FDD.  Plaintiff's violations are actionable under the Trade Protection Statutes because they constitute unfair and deceptive trade practices and employing unconscionable tactics in connection with the sale of goods or services.

Count Three of the counterclaims seeks a declaratory judgment that the Trademark License Agreement is an illegal contract and is null and void and unenforceable because of the aforesaid violations.  Similarly, Global Baristas' second affirmative defense to Plaintiff's allegations states that the Trademark License Agreement is null and void and unenforceable based on the violations of the registration and disclosure provisions of the laws governing the sale of franchises in California, Connecticut, Florida, Hawaii, Illinois, Indiana, Maryland, Michigan, Minnesota, New Jersey, New York, North Dakota, Oregon, Rhode Island, South Dakota, Virginia, Washington, and Wisconsin, and because the Trademark License Agreement violates public policy and is *per se* illegal.

## ARGUMENT

### I.  Standard of Review

Pleadings, including counterclaims, must only set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "The pleading standard Rule 8 announces does not require detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (internal quotation marks omitted) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,555, 127 S.Ct. 1955, 1964 (2009)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937, 1949

(internal quotation marks and citations omitted) (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955, 1966).  In order to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), counterclaims need only  "allege a plausible set of facts sufficient to raise a right to relief above the speculative level." *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Management LLC*, 595 F. 3d 86, 91 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955, 1974).  When deciding a motion to dismiss, a "court accepts all well-pleaded allegations in the complaint as true, drawing all reasonable inferences in the plaintiff's favor." *Operating Local 649*, 595 F.3d at 91.

Courts in the Second Circuit in general, and the Southern District of New York in particular, disfavor motions to strike pursuant Fed. R. Civ. P. 12(f).  *See, e.g., In re Merrill Lynch & Co., Research Reports Sec. Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003) ("motions to Strike are viewed with disfavor and infrequently granted"); *City of New York v. Fedex Ground Package System, Inc.*, 314 F.R.D. 348, 354-55 (S.D.N.Y. March 31, 2016) ("Motions to strike an affirmative defense are generally disfavored, and will not be granted unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense" (internal quotations marks and citations omitted) (citing *Salcer v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984), *vacated and remanded on other grounds*, 478 U.S. 1015, 106 S.Ct. 3324 (1986))); *Hidalgo v. Johnson & Johnson Consumer Companies, Inc.*, 148 F. Supp. 3d 285, 292 (S.D.N.Y. Dec. 8, 2015) ("Motions to strike under Rule 12(f) are rarely successful"); *Estee Lauder, Inc. v. Fragrance Counter, Inc.*, 189 F.R.D. 269, 271 (S.D.N.Y. Sept. 23, 1999) ("It is well-established in this Circuit that a motion to strike an affirmative defense under Rule 12(f), Fed. R. Civ. P. for legal insufficiency is not favored.").

"To prevail on a motion to strike, the moving party must satisfy a stringent three-pronged test: (1) there must be no question of fact that might allow the defense to succeed; (2) there must

be no substantial question of law that might allow the defense to succeed; and (3) the plaintiff must be prejudiced by the inclusion of the defense." *U.S. v. East River Housing Corp.*, 90 F. Supp. 3d 118, 131 (S.D.N.Y. March 2, 2015) (internal quotation marks and citations omitted).   With respect to the first two prongs, "[t]he moving party has the burden of demonstrating to the Court to a certainty that plaintiff would succeed despite any set of facts which could be proved to support the defense." *State of New York v. United Parcel Service, Inc.*, 160 F. Supp. 3d 629, 637 (S.D.N.Y. Feb. 8, 2016) (internal quotation marks and citations omitted); *see also Radiancy, Inc. v. Viatek Consumer Products Grp., Inc.*, No. 13-cv-3767 NSR, 2014 WL 4772340, at *2 (S.D.N.Y. Mar. 28, 2014), as amended (Apr. 1, 2014) ("In assessing the sufficiency of an affirmative defense, the Court 'should construe the pleadings liberally to give the defendant a full opportunity to support its claims at trial, after full discovery has been made'" (quoting *Cartier Int'l AG v. Motion in Time, Inc.*, No. 12 Civ. 8216(JMF), 2013 WL 1286975, at *3 (S.D.N.Y. Apr. 5, 2013))).   "If the sufficiency of the defense depends upon disputed questions of fact or law, then the motion to strike will be denied." *State of New York v. United Parcel Service*, 160 F. Supp. 3d at 637 (internal citations and quotation marks omitted).   To satisfy the third prong, the moving party must show that it will be prejudiced, and "mere assertions by the moving party that he is prejudiced are insufficient." *County Vanlines Inc. v. Experian Information Solutions, Inc.*, 205 F.R.D. 145, 153 (S.D.N.Y. Jan. 4, 2002).

## II.  Counterclaim I Sufficiently Alleges Violations of the Registration State Statutes

### a.  Plaintiff Violated the Registration State Statutes by Not Registering an FDD and Failing to Provide an FDD to Global Baristas

#### i.  Plaintiff Violated the California Franchise Investment Law

Plaintiff's motion should be denied with respect to the California Franchise Investment Law because Global Baristas was sold a franchise in California, the Trademark License Agreement is not exempt from the registration and disclosure requirements set forth in the California Franchise Investment Law §§ 31110 and 31119, and Plaintiff failed to register an FDD and provide that FDD to Global Baristas at least 14 days prior to the execution of the Trademark License Agreement.

The California legislature enacted the Franchise Investment Law for the following purpose:

> The Legislature hereby finds and declares that the widespread sale of franchises…has created numerous problems both from an investment and a business point of view in the State of California….*California franchisees have suffered substantial losses where the franchisor or its representative has not provided full and complete information regarding the franchisor-franchisee relationship, the details of the contract between franchisor and franchisee, and the prior business experience of the franchisor. It is the intent of this law to provide each prospective franchisee with the information necessary to make an intelligent decision regarding the franchises being offered….*

Cal. Corp. Code § 31001 (emphasis added). The California legislature unequivocally stated its intention to protect investors and businesses acquiring franchises in California. These strong protections must apply to Global Baristas, which were offered and sold a franchise that the parties intended to be operated in California.

California's Franchise Investment Law requires franchisors to register to offer and sell franchises in California. Cal. Corp. Code § 31110. The law further requires that the franchisor provide the prospective franchisee with an FDD and a copy of the franchise agreement at least 14 days prior to execution. Cal. Corp. Code § 31119. Plaintiff claims that the law does not apply because Plaintiff misreads the statute which unambiguously required Plaintiff to comply with the registration and disclosure provisions set forth in §§ 31110 and 31119. Plaintiff contends that the Trademark License Agreement does not fall within the scope of California's Franchise Investment

Law because (1) Global Baristas did not actually open the intended California location; and (2) the offer for sale was not made or accepted in California. Docket Entry 48 at 6.

Section 31013 regulates the offer of sale of franchises when:

(a) An offer or sale of a franchise is made in this state when an offer to sell is made in this state, or an offer to buy is accepted in this state, or, if the franchisee is domiciled in this state, the franchised business is or *will be operated in this state.*

*Id.* (Emphasis added).  The franchise granted by the Trademark License Agreement was intended to be operated in the state of California, and is therefore subject to the registration and disclosure requirements of the California Franchise Investment Law.[4]  It is of no moment that Global Baristas never actually opened for business in California.  By its own terms, the California Franchise Investment Law applies where the franchise business *will be* operated in California: The key consideration is whether the franchisee was granted the right to operate in California, not whether the franchisee actually opened a location in California before a dispute arose.  According to Plaintiff's construction of § 31013, a franchisee who contracts specifically to operate a store at a particular location in Los Angeles, but who goes broke before opening for business would not be entitled to relief.  Such a result would fly in the face of the intent of the California legislature to protect franchisees that will operate in California, as that same result would in this case.

Plaintiff also contends that it is exempt from compliance with the California Franchise Investment Law, citing § 31105. Docket Entry 48 at 6.  Plaintiff's franchise system is not exempt from California's registration and disclosure requirements because the Trademark License

---

[4] At the time the Trademark License Agreement was executed in July 2014, the managing member of Global Baristas, LLC was Doppio, Inc., a corporation with its principal place of business in California.  Global Baristas, LLC was therefore a citizen of California in July 2014. *See, e.g., Bayerische Landesbank, New York Branch v. Aladdin Capital Management, LLC*, 692 F.3d 42, 49 (2d Cir. 2012).  (Global Baristas U.S., LLC was also a citizen of California because its sole member at the time was Global Baristas, LLC.)  If necessary, the Court should allow Global Baristas to amend the counterclaims to incorporate these facts.

Agreement constitutes the sale of a franchise to be operated in California.  Section 31105 of the

California Corporations Code states:

> Any offer, sale or other transfer of a franchise, or any interest in a franchise, to a
> resident of another state or any territory or foreign country, shall be exempted from
> the provisions of Chapter 2 (commencing with Section 31110) of this part, if all
> locations from which sales, leases or other transactions between the franchised
> business and its customers are made, or goods or services are distributed, are
> physically located outside this state.

Cal. Corp. Code § 31105.  Contrary to Plaintiff's interpretation, however, the subject franchise is

not exempt from California's disclosure requirements, as the exemption proves that the law

applies.  If California wanted to exempt the sale of franchises to residents of other states, it easily

could have done so by explicitly exempting franchises sold to out-of-state residents whether or not

the proposed franchise would be located in California.  That is not what the legislature did, instead

only exempting franchises sold to out-of-state residents where the franchise was not intended to

be operated within California.

The legislative history further supports Global Baristas' position that the exemption does

not apply.  The California Senate stated that "This bill exempts the following offer or sale of

franchises from current-law disclosure requirements: 1. Any sale to an out-of-state resident where

the franchised business *will be* operated out of state." California Bill Analysis, A.B. 3061 Sen.,

7/08/1996 (emphasis added).  The legislature intended for this section to exempt sales of franchises

to out-of-state residents only where there was no possibility of the franchise being operated in

California.  This is "the exemption that proves the rule" which is that California's statute applies

to Global Baristas where they purchased a franchise that the parties intended to be operated in

California.

Additionally, Plaintiff does not cite any case in which a court refused to apply the

California Franchise Investment Law when a franchisor sold a franchise with the right to establish

a location of the franchised business in California.  Plaintiff cites two cases in support of its theory that the California Franchise Investment Law is inapplicable, both of which are inapposite.  First, *Stocco v. Gemological Institute of America, Inc.*, holds that where a franchise agreement requires an out-of-state franchisee to operate its physical location(s) solely outside of California, the California Franchise Investment Law is inapplicable. *Id.*, 975 F. Supp. 2d 1170, 1183 (S.D. Cal. Sept. 24, 2013) (the franchise agreement granted a license to, *inter alia*, "provide registration, instruction administration, and other support services for the students who enroll in the GIA Education Program offered by [GIA Italy] at the Facility.  [GIA Italy] ***may only conduct the GIA Education Program at the Facility*** [located in Florence, Italy]…." (Emphasis added).  Second, Plaintiff cites *It's Just Lunch International LLC v. Nichols*, which similarly found the California Franchise Investment Law to be inapplicable to an out-of-state franchisee who was required to operate only in Florida. *Id.*, No. EDCV 06-1127-VAp, 2009 WL 10668457, at *4 (C.D. Cal. May 21, 2009).  Both cases are inapposite because neither concerns a situation where, as here, a franchisee is sold the right to operate a franchise in California but has not yet begun operations in California at the time of the dispute.

As the statutory language and legislative history makes clear, Plaintiff was not exempt from the California Franchise Investment Law's registration and disclosure requirements because Plaintiff offered for sale and sold the right to operate a franchised business within the state of California.  Plaintiff's motion should be denied.

### ii.    Plaintiff Violated Michigan's Franchise Investment Law

Michigan requires franchisors to register as franchisors by filing a notice prior to offering or selling a franchise. Mich. Comp. Laws § 445.1507a(1).  Michigan also requires franchisors to

provide prospective franchisees with an FDD and a copy of the franchise agreement at least ten business days prior to execution. Mich. Comp. Laws § 445.1508(1) – (2).

Plaintiff attempts to escape its responsibility to comply with these requirements by claiming that it did not offer or sell a franchise in Michigan and Global Baristas never operated in Michigan.  Michigan law applies to this transaction.  Michigan does not require that either the franchisee or the franchisor be physically located in Michigan at the time of the transaction or that the franchise business is actually operated in Michigan.  The plain, unambiguous statutory language broadly covers franchise sales.

> **This act applies to all written or oral agreements between a franchisor and franchisee in connection with the offer or sale of a franchise**, including, though not limited to, the franchise offering, the franchise agreement, sales of goods and services, leases and mortgages of real or personal property, promises to pay, security interests, pledges, insurance, advertising, construction or installation contracts, servicing contracts, and all other arrangements in which the franchisor or subfranchisor has an interest.

Mich. Comp. Laws § 445.1504(1) (emphasis added).  There is no limitation that the offer or sale be made within the state of Michigan, as defined by the statute, and there is no limitation that the franchisee actually open a location in Michigan before a dispute arises. *Id.*  Michigan's law applies broadly to Michigan franchisees, and certainly to any franchise that *will be* operated in Michigan.

Plaintiff relies on one case, *Hacienda Mexican Rests. Of Kalamazoo Corp. v. Hacienda Franchise Grp., Inc.*, 489 N.W.2d 108 (Mich. Ct. App. 1992), in support of its interpretation that the statute does not apply to the present situation.  The *Hacienda* court refused to apply Michigan's franchise law to a transaction between two Indiana companies that contracted to operate a franchise in Michigan.  Respectfully, the Court should reject the *Hacienda* case, as it seems to misapprehend the unambiguous words of the statute highlighted above.  A District Judge is not required to follow a ruling made by a mid-level state appellate court, and this Court should disregard the *Hacienda*

11

case as it does not accurately reflect the words of the statute. *See, e.g., Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 48 (2d Cir. 2013) ("[E]ven in diversity cases [the Supreme] Court has…held that while the decrees of lower state courts should be attributed some weight…the decision is not controlling…where the highest court of the State has not spoken on the point" (quoting *Comm'r v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776 (1967))).  There is no requirement under Michigan law that Global Baristas actually open a physical location in Michigan, the key consideration is whether the franchisee was granted the right to operate in Michigan, not whether the franchisee opened a location in Michigan before a dispute arose.  The Court should reject Plaintiff's argument that Michigan's Franchise Investment Law does not apply.

The Michigan act expressly states that the intent of the legislature is to protect franchisees so that they are able to make an informed decision about entering into the franchise relationship, going so far as to state that it "should be construed broadly to effectuate its purpose of providing protection to the public.". Mich. Comp. Laws § 445.1501.  The Court should follow the intent of the legislature and the plain language of the statute to apply Michigan's protections for franchisees rather than one non-binding case that employs a questionable interpretation of the statute to limit its scope.

Plaintiff did not comply with the notice filing and disclosure requirements in Michigan's franchise law, and failed to demonstrate that it is not bound by those requirements, and therefore the motion should be denied.

### iii.   Plaintiff Violated the North Dakota and Rhode Island Franchise Laws

North Dakota and Rhode Island have enacted statutes regulating the sale of franchises. *See* North Dakota's Franchise Investment Law, North Dakota Statute and Court Rules, Title 51 § 51-19-01 *et seq.*; Rhode Island's Franchise Investment Act, Title 19, Chapter 28.1 § 19-28.1-1 *et seq.*

12

North Dakota and Rhode Island have similar requirements, in that they both require franchisors to register an FDD and provide the registered FDD and franchise agreement to franchisees before the franchise agreement is executed. *See* N.D. Cent. Code §§ 51-19-03 and 51-19-08; 19 R.I. Gen Laws §§ 19-28.1-5 and 19-28.1-8.  Plaintiff did not register an FDD in either North Dakota or Rhode Island, and did not provide copies of a registered FDD or franchise agreement prior to the execution of the franchise agreement in violation of North Dakota and Rhode Island's franchise laws.

The language of the Rhode Island and North Dakota statutes are substantially similar to that of California's statute, and so Plaintiff has similarly failed to meet its burden of demonstrating that the statutes are inapplicable.  Just as the California statute applies where, as here, a franchisee purchases a franchise to be operated in California, the North Dakota and Rhode Island statutes apply when a franchisee purchases a franchise that will be operated in North Dakota and Rhode Island, respectively.  Plaintiff cites no authority supporting its interpretation of either the North Dakota or the Rhode Island statute.

The Rhode Island act expressly states that

> The Legislature finds that franchisees may suffer substantial losses when the franchisor does not provide complete information regarding the franchisor and the franchise relationship.  The legislature also finds that amny franchisees lack bargaining power and purchase a franchise when they are unfamiliar operating a business, the franchised business and with industry practices in franchising.  The act seeks to ensure that *each offeree receives the information necessary to make an informed decision about the offered franchise*….

19 R.I. Gen Laws §§ 19-28.1-2 (emphasis added).  The North Dakota statute, given its similar language can be inferred to have the same purpose in mind.  As such, both statutes are intended to broadly protect franchisees acquiring franchises in North Dakota and Rhode Island, respectively. It does not matter that Global Baristas did not open a physical location in either state before the

13

dispute arose, the fact that Global Baristas was sold the right to operate a franchise in Rhode Island and North Dakota brings the transaction within the purview of both states' laws designed to protect franchisees that may operate in those states.  It is likely that North Dakota courts would hold that Plaintiff violated the Franchise Investment Law and Rhode Island courts would hold that Plaintiff violated the Franchise Investment Act by failing to register and disclose an FDD.

Plaintiff also mistakenly contends that the "out-of-state exemption" in Rhode Island's Franchise Investment Act applies. Docket Entry 48 at 8.  For that exemption to apply, four conditions must be met: 1) the franchise is offered to a nonresident of Rhode Island; 2) the franchise business will not be operated wholly or partly in Rhode Island; 3) the offer or sale does not violate federal law or the law of the foreign jurisdiction; **and** 4) the offeree is not actually present in Rhode Island during any sale or offer. 19 R.I. Gen Laws § 19-28.1-7 (emphasis added). At least two of those prerequisites are not met.  First, the Trademark License Agreement sold a franchise business to be operated in Rhode Island, thereby negating the second requirement that the franchise will not be operated even partly in Rhode Island.  Second, the offer and sale violated both federal law (the FTC Rule[5]) and Washington state law, thereby negating the fourth requirement for the out-of-state exemption to apply.  Again, the exemption proves the rule: Rhode Island could easily have exempted sales of franchises to all out-of-state residents, but instead it only exempted sales to out-of-state residents under certain conditions, including that the franchise business would not be operated in Rhode Island.

---

[5] The Federal Trade Commission regulates the sale of franchises pursuant to 16 C.F.R. § 436.1, *et seq.* (the "FTC Rule") and requires franchisors to provide an FDD to franchisees 14 days prior to the execution of the franchise agreement, which Plaintiff did not do.

Plaintiff violated the North Dakota Franchise Investment Law and the Rhode Island Franchise Investment Act, and has failed to demonstrate that it was exempt from compliance with either.  Plaintiff's motion should be dismissed.

### iv.   Plaintiff Violated Hawaii's Franchise Investment Law

Plaintiff's motion should be denied with respect to Hawaii's Franchise Investment Law because the subject franchise business falls within the scope of the law.  Plaintiff attempts to demonstrate that Plaintiff was exempt from complying with Hawaii's law by quoting Haw. Rev. Stat. § 482E-4(a)(4), which exempts "The offer or sale to a franchisee or prospective franchisee where the franchisee or prospective franchisee is not domiciled in this State *and* where the franchise business will not be operated in this State." *Id.* (emphasis added).  Hawaii's law applies to Plaintiff, and even the language Plaintiff quotes supports Global Baristas' position.  Plaintiff failed to comply with Hawaii's law, and so its motion should be denied.

The Hawaii Franchise Investment Law requires franchisors and prospective franchisors to register an FDD and provide that FDD to prospective franchisees prior to the execution of a franchise agreement. Haw. Rev. Stat. § 482E-3(a) and (c).  "It is unlawful for any person to sell a franchise in this State unless such person has presented to the prospective franchisee…at least seven days prior to the sale of the franchise, an offering circular" that contains specific information that mirrors the disclosure requirements set forth in the FTC Rule. Haw. Rev. Stat. § 482E-3(a). Plaintiff did not provide the "offering circular" or FDD to Global Baristas at all. Counterclaims at ¶ 10.  As such, Plaintiff violated Hawaii's Franchise Investment Act.

Plaintiff's citation to the exemption granted by Hawaii's Franchise Investment Law is misplaced.  Haw. Rev. Stat. § 482E-4(a)(4) (exempting sales to franchisees who (1) are not domiciled in Hawaii *and* (2) will not operate the franchised business in Hawaii).  The exemption

does not apply because the Trademark Licensing Agreement specifically sold a franchise to be operated within the State of Hawaii. Counterclaims at ¶ 5. Where, as here, the franchise agreement sells a franchise to be operated in Hawaii, it is of no moment that the franchisee never actually began operations. The unambiguous terms of the exemption cited by Plaintiff only exempt franchise businesses that *will not be* operated in Hawaii, not those that *may be* operated in Hawaii. Logically, it follows that the requirements Hawaii imposes on franchisors with respect to making disclosures to prospective franchisees are not dependent on the prospective franchisee actually opening a franchise business in Hawaii. The key consideration is whether the franchise that is offered for sale or that was sold may be operated in Hawaii. Once again, this is the exemption that proves the rule: If Hawaii wanted to exempt the sale of franchises to residents of other states, it easily could have done so by adding a provision which specifically exempted out-of-state residents whether or not the proposed franchise would be located in Hawaii. That is not what the legislature did, instead only exempting franchises sold to out-of-state residents where the franchise was not intended to be operated within Hawaii, proving that the law applies to out-of-state franchisees that are sold the right to operate in Hawaii.

The Trademark License Agreement constitutes an offer for sale and the sale of a franchise in Hawaii. The fact that Global Baristas never actually opened a store in Hawaii is irrelevant because they were offered and sold the right to open such a franchise business. Accordingly, Plaintiff's motion must be denied with respect to Hawaii's Franchise Investment Law.

### v.   Plaintiff Violated Virginia's Retail Franchising Act

Plaintiff violated the terms of Virginia's Retail Franchising Act by not registering an FDD or providing the FDD to Global Baristas. Plaintiff was required to register the franchise prior to offering for sale and selling the franchise to Global Baristas, LLC. Va. Code Ann. § 13.1-560.

Plaintiff did not register the franchise prior to offering it or selling it to Global Baristas, LLC. Counterclaims at ¶10.  Plaintiff was also required to provide Global Baristas, LLC with a copy of the franchise agreement and the FDD prior to selling the franchise to Global Baristas, LLC. Va. Code Ann. § 13.1-563.  Plaintiff did not provide either document to Global Baristas, LLC in compliance with the Virginia Retail Franchising Act.

Virginia's Retail Franchising Act is applicable to the franchise relationship between Plaintiff and Global Baristas, so Plaintiff's motion must be denied with respect to Virginia. Plaintiff quotes the relevant language in its opening paragraph on page 9 of Docket Entry 48: "This chapter shall apply only to a franchise the performance of which *contemplates* or requires the franchisee to establish or maintain a place of business within the Commonwealth of Virginia." Va. Code Ann. § 13.1-559(B) (emphasis added).  The Virginia Supreme Court has construed this section liberally, holding that "it simply requires the business transacted under the franchise agreement to have a nexus to the Commonwealth." *Crone v. Richmond Newspapers, Inc.*, 384 S.E.2d 77, 80-81 (Va. 1989).  The court continues, "In our view, the provision is not so restrictive…as to place the burden upon a party seeking protection of the Act to show that a fixed physical site where business is transacted, such as a shop, office or warehouse, has been established." *Id.* at 81.  The Trademark License Agreement plainly contemplates Global Baristas, LLC establishing a business in Virginia, which satisfies the requirement that the business has a nexus to Virginia. Counterclaims at ¶ 5.  The fact that Global Baristas had not yet opened any physical location in Virginia does not render the statute inapplicable.

Plaintiff further contends that Global Baristas cannot recover under Virginia's Retail Franchising Act; however, Global Baristas are entitled to civil remedies pursuant to Va. Code Ann. § 13.1-571.  Global Baristas are entitled to void the Trademark License Agreement pursuant to §

17

13.1-565 for Plaintiff's violations of §§ 13.1-560 and 13.1-563.  Plaintiff also claims to have cancelled the franchise agreement as of December 1, 2017.  Such a cancellation is a violation of § 13.1-564.  Global Baristas are entitled to damages, costs and attorney's fees in addition to all other remedies. Va. Code Ann. § 13.1-571.

Plaintiff's motion should be denied with respect to violations of the Virginia Retail Franchising Act.

### b.  Global Baristas Counterclaims are Timely[6]

#### i.   The Counterclaims Were Brought Within California's Four-Year Period

Global Baristas' counterclaims based on the California Franchise Investment Law are timely because they were brought within four years of the act or transaction constituting the violation. Cal. Corp. Code § 31303.  The Trademark License Agreement was executed in July 2014, and Global Baristas' amended counterclaims relate back to and are deemed filed when the original answer and counterclaims were filed on February 13, 2018, within four years of the transaction. Fed. R. Civ. P. 15(c)(1)(B).

Global Baristas alleges two violations of the California Investment Act for which Plaintiff is liable: 1) failure to register an FDD under Cal. Corp. Code §§ 31110 and 31300; and 2) failing to provide a copy of the FDD and franchise agreement to Global Baristas at least fourteen days prior to the execution of the Trademark License Agreement pursuant to Cal. Corp. Code §§ 31119 and 31300.  Plaintiff has not alleged and has cited no basis whatsoever for the proposition that the failure to register claim is time-barred.  Moreover, whether Global Baristas knew or should have known that the FDD was not registered is a factual question inappropriate for a motion to dismiss.

---

[6] Plaintiff raises statute of limitations arguments only with respect to those counterclaims in count one which rely on California, Hawaii and Washington law, not those which rely on Michigan, North Dakota, Rhode Island or Virginia law, nor does it raise statute of limitations arguments with respect to the Trade Protection Statutes in count two.

Plaintiff does argue that the failure to provide the FDD to Global Baristas is time-barred; however, "A motion to dismiss on statute-of-limitations grounds will not lie unless it is unequivocally clear from the face of the complaint that the statute has run." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980).  Plaintiff's arguments about what Global Baristas knew and when such information was known does not disprove the allegations in the counterclaims, which must be accepted as true. *Elhilu v. Quizno's Franchising Co., LLC*, 2:06-cv-077855-FMC-CTx, 2008 WL 11338130, at *2 (C.D. Cal. Apr. 3, 2008) (denying motion to dismiss California Franchise Investment Law claim on statute of limitations grounds).  Plaintiff's argument that Global Baristas had a duty to know that they had not been given a properly registered FDD at the time the Trademark License Agreement was executed must also fail. *Degla Group for Investments, Inc. v. BoConcept USA, Inc.*, No. 2:09-cv-05278-FMC-AGRx, 2009 WL 10673164, at *7 (C.D. Cal. Oct. 15, 2006) (denying motion to dismiss because franchisee did not have a duty know that it had not been given a properly registered FDD).  Like the defendant in *Degla*, Plaintiff has no factual support for the allegation that Global Baristas "knew" Plaintiff had not provided a properly registered FDD at the time the Trademark License Agreement was executed. *Id.*

Global Baristas counterclaims were timely filed, and the motion to dismiss on statute of limitations grounds should be denied.

### ii.    The Counterclaims Were Brought Within Hawaii's Seven-Year Period

The counterclaims are timely with respect to the Hawaii Franchise Investment Law as the claims are brought within seven years of the date of violation. Haw. Rev. Stat. § 482E-10.5(b).  Plaintiff has not alleged and has cited no basis whatsoever for the proposition that the failure to register claim is time-barred.  Moreover, whether Global Baristas knew or should have known that the FDD was not registered is a factual question inappropriate for a motion to dismiss.  Plaintiff

does argue that the claim for failure to provide a properly registered FDD is time-barred, but that argument should be denied for the same reasons Plaintiff's identical argument under California law should be denied.

### iii.    Global Baristas is Entitled to Relief Under Washington's Franchise Investment Protection Act[7]

Plaintiff's motion should be denied with respect to FIPA, which was enacted in 1972 by the Washington Legislature "in order to correct [the] maldistribution of information and power" existing in favor of franchisors. *Lobdell v. Sugar N' Spice, Inc.*, 33 Wash. App. 881, 888, 658 P.2d 1267 (1983), *review denied*, 99 Wn. 2d 1016 (1983).  "[FIPA] deals with franchise sales abuses by requiring registration of offers and full disclosure of facts material to the transaction." *Id.*  FIPA seeks to "maximize franchisor overreaching." *Nelson v. National Fund Raising Consultants, Inc.*, 120 Wn. 2d 382, 391, 842 P.2d 473 (1992).  FIPA expresses a fundamental public policy of Washington. R.C.W. 19.100.220(3); *Rutter v. BX of Tri-Cities, Inc.*, 60 Wash. App. 743, 748, 806 P.2d 1266 (1991).

The only basis Plaintiff states for dismissing the counterclaims based on FIPA is that they are time-barred under Washington's "catch-all" limitations statute, Wash. Rev. Code § 4.16.130. Docket Entry 48 at 10.  Plaintiff suggests that the Court follow a decision from the S.D.N.Y. interpreting Washington law where the court held that the two-year limitations period applied; however, this Court is not bound by that decision, and the Western District of Washington has held that claims under FIPA have a six-year statute of limitations. *McGowan v. Pillsbury Co.*, 723 F. Supp. 530, 537 (W.D. Wash. Mar. 13, 1989).  The *McGowan* court held that the "catch-all" provision would only apply where there is no other applicable statute of limitations, and because,

---

[7] Plaintiff does not (nor could it) challenge the applicability of Washington's Franchise Investment Protection Act ("FIPA"), the only argument Plaintiff makes is that the claims under FIPA are time-barred.

as here, the dispute involved a franchise agreement, the six-year limitations period controlled. *Id.* Court should follow *McGowan*, and apply a six-year statute of limitations.

**III.     Count II of Global Baristas' Counterclaims Are Properly Pleaded**

    **a.   Plaintiff Violated Florida's Deceptive and Unfair Trade Practices Act**

Nothing in the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") explicitly limits remedies to Florida residents.  The purpose of the statute is "(1) To simplify, clarify, and modernize the law governing consumer protection, unfair methods of competition, and unconscionable, deceptive and unfair trade practices. (2) To protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce…." Fla. Stat. Ann. § 501.202.  A "consumer" is defined as "an individual; child, by and through its parent or legal guardian; business; firm; association; joint venture; partnership; estate; trust; business trust; syndicate; fiduciary; corporation; any commercial entity; however denominated; or any other group or combination." Fla. Stat. Ann. § 501.203(7).  The FTC Rule provides that it is an unfair or deceptive act for a franchise seller to fail to furnish a prospective franchisee with a copy of the franchisor's current FDD at least 14 calendar days before the prospective franchisee signs the franchise agreement. 16 C.F.R. § 436.2.  Plaintiff sold Global Baristas a franchise without providing an FDD, thereby violating the FTC Rule.  By violating the FTC Rule, Plaintiff violated FDUTPA. Fla. Stat. Ann. § 501.204(1)-(2).  As such, Plaintiff is liable to Global Baristas.

Florida federal and state courts have agreed with Global Baristas' construction of FDUTPA.  "The Court is unpersuaded that the FDUTPA provides relief only to Florida consumers." *Barnext Offshore, Ltd. v. Ferretti Group USA, Inc.*, No. 10-23869-CIV, 2012 WL 1570057, at *6 (S.D. Fla. May 12, 2012).  "The FDUTPA is to be applied broadly and is not limited

[to Florida residents or conduct occurring in Florida].” *Id.* Similarly, the Middle District of Florida has applied FDUTPA to out of state residents. *2P Commercial Agency S.R.O. v. Familant*, No. 2:11-cv-652-FTM-29, 2012 WL 6615889, at *4 (M.D. Fla. Dec. 19, 2012) (“The express language of FDUTPA does not include ‘any geographical or residential restrictions.’”). “FDUTPA does not specifically limit “consuming public” or “legitimate business enterprises” to citizens or residents of Florida.” *Id.* (citing Fla. Stat. Ann. §§ 501.202 and 501.203(7)-(8)). The federal courts took their lead from Florida state courts, which similarly find no geographical limitation in the FDUTPA. *See Millennium Communications & Fulfillment, Inc. v. Office of Attorney General, Dept. of Legal Affairs, State of Fla.*, 761 So. 2 1256, 1261 (Fla. 3d DCA 2000) (“Conspicuously absent from this chapter, as the Department correctly observes, is any language which purports to confine the provisions of FDUTPA or limit the Department’s enforcement authority to commercial transactions involving only Florida residents”); *Renaissance Cruises, Inc. v. Glassman*, 738 So. 2d 436 (Fla. 4th DCA 1999) (certifying class including out-of-state residents).

Both the express language of FDUTPA and Florida federal and state courts’ interpretation of that language support applying to FDUTPA to Plaintiff’s offer and sale of the subject franchise. By selling Global Baristas a franchise to be operated in Florida, Plaintiff subjected itself to Florida law, including FDUTPA which regulates the sale of franchises in Florida. Plaintiff’s motion should be dismissed with respect to FDUTPA.

### b.  Plaintiff Violated the New Jersey Consumer Frauds Act

Plaintiff’s motion to dismiss the New Jersey Consumer Fraud Act (“NJCFA”) claims should be denied because the NJCFA applies to franchises, and has extraterritorial application. Plaintiff makes two arguments as to why the NJCFA claims should be dismissed: First, it claims that the NJCFA does not apply to the sale of franchises. This is not true. The courts of the state

of New Jersey have repeatedly held that the NJCFA applies to the sales of franchises. *See Kugler v. Koscot Interplanetary, Inc.*, 120 N.J. Super. 216, 293 A.2d 682 (Ch. Div. 1972); *Morgan v. Air Brook Limousine, Inc.*, 211 N.J. Super. 84, 94-100, 510 A.2d 1197 (Law Div. 1986).

Despite the decades of New Jersey decisions to the contrary, in 1994, the Third Circuit held that the Supreme Court of New Jersey would probably find the NJCFA inapplicable to the sale of franchises. *J&R Ice Cream Corp. v. California Smoothie Licensing Corp.*, 31 F.3d 1259 (3d Cir. 1994). As the federal courts in the District of New Jersey are bound by Third Circuit precedent, they have dutifully followed the outlier *J&R Ice Cream* decision. Those decisions are not binding on this Court. Global Baristas respectfully suggests that the Court follow the long line of New Jersey state court cases that hold the NJCFA does regulate the sale of franchises.

Even after *J&R Ice Cream*, New Jersey state courts continued to find the NJCFA applicable. *Kavky v. Herbalife Intern. of America*, 359 N.J. Super. 497, 820 A.2d 677 (App. Div. 2003). That New Jersey state courts continue, without being overruled by the Supreme Court of New Jersey, to find the NJCFA applicable to the sale of franchises is far more persuasive that a 25-year-old Third Circuit case in which that court tried to divine how the state courts would rule on the issue, but District Courts in New Jersey cannot align their interpretation of the NJCFA with New Jersey State Courts until the Third Circuit overrules *J&R Ice Cream*. The NJCFA is applicable to the sale of franchises, and Plaintiff violated the NJCFA by failing to register an FDD and disclose the contents of the registered FDD and franchise agreement prior to executing the Trademark License Agreement. 16 C.F.R. § 436.2; N.J.S.A. § 56:8-2.

Plaintiff also tries to avoid liability by claiming that the NJCFA does not apply to non-residents that buy New Jersey franchises, but New Jersey courts, both state and federal take it for granted that the NJCFA applies extraterritorially. *See Int'l Union of Operating Engineers Local*

23

*No. 68 Welfare Fund v. Merck & Co., Inc.*, 384 N.J. Super. 275, 894 A.2d 1136 (App. Div. 2006),

*reversed on other grounds*, 192 N.J. 372, 929 A.2d 1076 (2007); *Elias v. Ungar's Food Products,*

*Inc.*, 252 F.R.D. 233 (D.N.J. 2008).   Plaintiff offered and sold a franchise to be operated in the

state of New Jersey.   New Jersey regulates the sale of franchises in New Jersey, and thus has a

strong interest and connection to this matter.

Plaintiff's motion with respect to the NJCFA should be denied.

## IV.    Count Three of the Counterclaims is Properly Plead

Count three of the counterclaims seeks a judgment declaring that the Trademark License

Agreement is an illegal contract, and is null and void and unenforceable as to Global Baristas.

Plaintiff violated the Registration State Statutes, the Trade Protection Statutes and the FTC Rule,

as set forth above, and Global Baristas is entitled to a declaratory judgment.   Plaintiff simply states

that count three of the amended counterclaims should be dismissed because the law Global Baristas

relies on is inapplicable without any further explanation.   As stated above, Global Baristas has

properly plead claims under the Registration State Statutes and the Trade Protection Statutes.

Plaintiff's motion with respect to count three should be denied.

## V.    Global Baristas Second Affirmative Defense Is Properly Asserted

Plaintiff makes no additional arguments other than those made in its motion to dismiss

counts one and two as to why Global Baristas' second affirmative defense should be stricken with

respect to either the Registration State Statutes or the Trade Protection Statutes.   Plaintiff simply

states that the affirmative defense should fail "for the same reason as its counterclaims." Docket

Entry 48 at 13.   As explained above, the Registration State Statutes and the Trade Protection

Statutes are applicable because Plaintiff sold Global Baristas the right to operate and the parties

intended that Global Baristas operate franchises in each of those states, thereby bringing the offer

and sale of the franchise under the purview of the Registration State Statutes and the Trade

Protection Statutes. See Sections II – III, *supra*.  Plaintiff's motion to strike should be denied.

To the extent Plaintiff's motion relies on California, Hawaii and Washington's statutes of

limitations to strike Global Baristas' second affirmative defense, Plaintiff is incorrect as to the

applicable statutes of limitations having run, as explained above, and statutes of limitations do not

apply to defenses.[8] *See, e.g., Styne v. Stevens*, 26 Cal. 4th 42, 51, 26 P.3d 343, 350 (Cal. 2001)

("Under well-established authority, a defense may be raised at any time, even if the matter alleged

would be barred by a statute of limitations if asserted as the basis for affirmative relief"); *Cellular

Engineering, Ltd. v. O'Neill*, 820 P.2d 941, 945 (Wash. 1991) (statutory limitations period only

applied to causes of action, not defenses); *Fruit v. Fancher*, 242 P. 11, 12 (Wash. 1926) ([A]n

equitable defense to an action is not barred by the statute of limitations…so long as the cause of

action survives, an equitable defense thereto should survive also.  This rule is sustained by many

authorities").  Therefore, even if the statutes of limitations in California, Hawaii and Washington

bar Global Baristas' counterclaims (which they do not, as explained above), Global Baristas'

second affirmative defense cannot be stricken on statute of limitations grounds.  The Trademark

License Agreement is an illegal contract that is unenforceable against Global Baristas because

Plaintiff failed to comply with federal and state law regulating the offer and sale of franchises, a

complete defense.  Plaintiff cannot enforce an illegal contract by avoiding this defense on statutes

of limitations grounds, even if the Court finds that Global Baristas' affirmative claims may be

barred.

---

[8] Plaintiff makes no attempt to dispute that Washington's FIPA applies other than to argue that Global Baristas' FIPA counterclaims are time-barred.  Plaintiff violated FIPA by (1) failing to register an FDD with the Washington Department of Financial Institutions (R.C.W. 19.100.020(1)); and (2) failing to provide Global Baristas with a properly registered FDD (R.C.W. 19.100.080(1).  These violations render the Trademark License Agreement unenforceable. *See, Brader v. Minute Muffler*, 914 P.2d 1220, 1222 (Wash. Ct. App. 1996) (FIPA registration and disclosure violations render franchise agreement unenforceable as against public policy).

Plaintiff cannot meet its burden on any of the three prongs it must satisfy to succeed on a motion to strike pursuant to Fed. R. Civ. P. 12(f).  In fact, Plaintiff did not even attempt to argue that it met its burden with respect to the first and third prongs of that test. Docket Entry 48 at 13 – 15.  Instead, Plaintiff erroneously argues that the affirmative defense should be stricken "because it relies on inapplicable law." *Id.* at 14.  "Formulaic recitations of the elements…will not do" for a complaint, and they certainly should not do for a memorandum of law in support of a motion that is generally disfavored by courts in this district. *Iqbal*, 556 U.S. at 678; *Fedex Ground Package System*, 314 F.R.D. at 354-355.

Plaintiff has manifestly failed to meet its burden with respect to prong one, which requires that there be "no question of fact that might allow the defense to succeed." *U.S. v. East River Housing Corp.*, 90 F. Supp. 3d at 131.  Plaintiff cannot meet its burden without even making an argument.  Even if Plaintiff attempted to meet its burden with respect to the first prong, Plaintiff would fail.  Global Baristas has alleged that it was sold franchises in every state in the country, a question of fact that not only might allow the second affirmative defense to succeed, but conclusively establishes a connection to each state statute cited by Global Baristas that brings the defense under the jurisdiction of those statutes.  Plaintiff has not met its burden to prove that no question of fact exists that might allow the defense to succeed.

Similarly, Plaintiff does not even attempt to satisfy its burden with respect to the third prong, and fails to make an argument that it will be prejudiced if the Court rightly refuses to strike Global Baristas' second affirmative defense.  The only mention Keurig makes of the third prong is in the last paragraph of its memorandum where Keurig simply offers a "threadbare recital of the elements" of the Rule 12(f) standard, "supported by [the] mere conclusory statement[]" that "Keurig would be prejudiced." *Iqbal*, 556 U.S. at 678-679.  Reciting the elements of the standard

26

courts in this circuit use to analyze a motion to strike and then baldly claiming one of the elements of the standard is met without any facts or law cited to support that statement falls far short of meeting Plaintiff's heavy burden. *County Vanlines Inc.*, 205 F.R.D. at 153.

Finally, Plaintiff fails to satisfy the second prong because Plaintiff's interpretation of the applicable state franchise laws is erroneous.  With respect to the Registration State Statutes and the Trade Protection Statutes, Global Baristas incorporates its arguments set forth above as to why those statutes apply to the Trademark License Agreement.  Plaintiff attempts to create a question of whether or not the additional state laws cited in the second affirmative defense apply to the Trademark License Agreement. Docket Entry 48 at 18-19.   Nothing that Plaintiff raises demonstrates that there is "no substantial question of law that might allow the defense to succeed." *East River Housing*, 90 F. Supp. 3d at 131.  Plaintiff at most creates a question as to whether the statutes apply; however, "If the sufficiency of the defense depends upon disputed questions of fact *or law*, then the motion to strike will be denied." *United Parcel Service*, 160 F. Supp. 3d at 637 (internal citations and quotation marks omitted) (emphasis added).

Global Baristas properly raised the second affirmative defense with respect to the Connecticut Franchise Act, the Indiana Franchise Act, the Maryland Franchise Registration and Disclosure Act, the Minnesota Franchise Act, the New Jersey Franchise Practices Act, and the New York Franchise Sales Act, all of which apply to franchise agreements that contemplate a business within those states.  The Connecticut Franchise Act applies to "franchise agreements…the performance of which *contemplates* or requires the franchisee to establish or maintain a place of business in Connecticut." Conn. Gen. Stat. Ann. § 42-133h (emphasis added).  The Trademark License Agreement contemplates Global Baristas opening a franchise business in every state in the country, including Connecticut.  The Connecticut Franchise Act therefore applies. *Id.*  The case

Plaintiff cites is consistent with Global Baristas' position. *Forbes v. Joint Medical Products Corp.*, 976 F. Supp. 124 (D. Conn. 1997).  Similarly, the franchise laws in Indiana, Minnesota, New Jersey and New York explicitly apply to franchises where the parties contemplate the business will be located within those states. *See* Ind. Code § 23-2-2.5-2 ("This chapter applies to an offer or franchise if…the franchised business contemplated by the offer or franchise will be or is operated in Indiana"); Md. Code Ann., Bus. Reg. § 14-203(a)(2) ("This subtitle applies to an offer to sell or sale of a franchise if…the franchised business will be or is operated in the State"); Minn. Stat. Ann. § 80C.19 ("The provisions…apply…when the franchise is to be located in this state"); N.J. Stat. Ann. § 56:10-4 ("This act applies only a. to a franchise (1) the performance of which contemplates or requires the franchisee to establish or maintain a place of business within the State of New Jersey…"); N.Y. Gen Bus. Law § 681(12)(a) (the act applies to franchises that "will be operated in this state").  That Global Baristas never actually began operations in any of those states is irrelevant: The statutes merely require that the parties intended that the franchise could be operated within the states.

Florida courts have frequently applied the Florida Franchise Act, Fla. Stat. § 817.416, to non-residents of Florida even when there was not a physical location within Florida. *See Burger King Corp. v. Austin*, 805 F. Supp. 1007, 1021-23 (S.D. Fla. Oct. 9, 1992); *Burger King Corp. v. Holder*, 844 F. Supp. 1528, 1530-31 (S.D. Fla. Feb. 5, 1993); *Lady of America Franchise Corp. v. Malone*, No. 05-61304-CIV, 2006 WL 7354110, at *2-4 (S.D. Fla. Feb. 13, 2006).  The Florida Franchise Act does not define "doing business in Florida," and there is a substantial question of whether entering into a contract for establishing a franchise in Florida constitutes "doing business."

Plaintiff is correct that Oregon's franchise law is analogous to Michigan's in the sense that neither requires the franchisee or franchisor to be located "within the state," or the franchised

business to have been actually opened at the time the dispute arose Or. Rev. Stat. § 650.020. Oregon law applies when a franchisee is sold the right to operate in Oregon.  As such, Oregon's statute applies to the Trademark License Agreement because the parties intended for the franchise to be operated in Oregon.

At the very least, Plaintiff has failed to meet its burden of showing there is *no substantial question of law* that might allow the second affirmative defense to succeed.

Plaintiff failed to meet its burden with respect to any of the three prongs required to succeed on a Fed. R. Civ. P. 12(f) motion to strike.  Plaintiff's motion should be denied.

## VI.    Conclusion

For the reasons set forth above, Global Baristas has plausibly stated claims for relief under the Registration State Statutes and the Trade Protection Statutes, and Plaintiff has not met its significant burden under Fed. R. Civ. P. 12(f) to strike Global Baristas' properly asserted second affirmative defense.   Wherefore, Global Baristas respectfully requests that this Court DENY Plaintiff's motion in its entirety.


EINBINDER & DUNN, LLP
Counsel for Defendants

By: ___/s/ Michael Einbinder_____
        Michael Einbinder



Dated: July 5, 2018

29