UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEURIG GREEN MOUNTAIN, INC., a Delaware corporation,<br><br>　　　　　　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>GLOBAL BARISTAS U.S., LLC, a Washington limited liability corporation, and GLOBAL BARISTAS, LLC, a Washington limited liability corporation,<br><br>　　　　　　　　　　　　　Defendants. | Case No. 1:18-cv-00095-LAK |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO DISMISS DEFENDANTS' AMENDED COUNTERCLAIMS AND STRIKE DEFENDANTS' SECOND AFFIRMATIVE DEFENSE**

THE LAW OFFICE OF
RUSSELL D. MORRIS PLLC
Russell D. Morris
545 Fifth Avenue, Suite 640
New York, New York 10017
Tel: (212) 380-1619

FREDRIKSON & BYRON, P.A.
Cynthia A. Moyer (admitted pro hac vice)
Laura L. Myers (admitted pro hac vice)
Barbara Marchevsky (admitted pro hac vice)

200 South Sixth Street, Suite 4000
Minneapolis, Minnesota 55402-1425
Tel: (612) 492-7000

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

Page

**INTRODUCTION** ................................................................................................................... 1

**ARGUMENT** ........................................................................................................................... 1

I.   GB'S FIRST COUNTERCLAIM FAILS TO STATE A CLAIM FOR RELIEF. ............. 1

    A.   **GB's First Counterclaim Relies On Inapplicable State Law.** ................................. 1

        1.   *California* ........................................................................................................ 1

        2.   *Michigan, North Dakota, and Rhode Island* .......................................................... 3

        3.   *Hawaii* ........................................................................................................ 4

        4.   *Virginia* ....................................................................................................... 5

    B.   **GB's First Counterclaim Is Also Time-Barred Under The Correct Statutes Of Limitation In Washington, California, And Hawaii** ............................................... 6

II.  GB'S SECOND COUNTERCLAIM FAILS TO STATE A CLAIM FOR RELIEF. ........................................................................................................................... 7

    A.   **Florida's Deceptive And Unfair Trade Practices Act Does Not Apply** ................ 7

    B.   **New Jersey's Consumer Frauds Act Does Not Apply.** ........................................... 8

III. GB'S THIRD COUNTERCLAIM IS BASED ON THE FIRST TWO AND THEREFORE FAILS TO STATE A CLAIM FOR RELIEF. ........................................... 9

IV.  THE COURT SHOULD STRIKE GB'S SECOND AFFIRMATIVE DEFENSE. ........... 9

**CONCLUSION** ....................................................................................................................... 10

**TABLE OF AUTHORITIES**

### Cases

*A.H. Meyers & Co. v. CAN Ins. Co.*,
  88 F. App'x 495 (3d Cir. 2004) .................................................................................................. 8

*Barnext Offshore, Ltd. v. Ferretti Grp. USA, Inc.*,
  No. 10-23869-CIV, 2012 WL 1570057 (S.D. Fla. May 12, 2012) ........................................... 8

*BigFix Asia PTE LTD v. BigFix, Inc.*,
  No. C 08-4023, 2009 WL 10692076 (N.D. Cal. Feb. 2, 2009) ................................................ 7

*Blackhall v. Access Grp.*,
  No. 2:10-00508, 2010 WL 3810864 (D.N.J. Sept. 22, 2010) ................................................... 9

*Coach, Inc. v. Kmart Corps.*,
  756 F. Supp. 2d 421 (S.D.N.Y. 2010) ..................................................................................... 10

*Crone v. Richmond Newspapers, Inc.*,
  384 S.E.2d 77 (Va. 1989) .......................................................................................................... 5

*Degla Grp. for Invs., Inc. v. BoConcept USA, Inc.*,
  No. 2:09-cv-05278, 2009 WL 10673164 (C.D. Cal. Oct. 15, 2009) ........................................ 7

*Elhilu v. Quizno's Franchising Co., LLC*,
  No. 2:06-cv-07855, 2008 WL 11338130 (C.D. Cal. Apr. 3, 2008) .......................................... 7

*It's Just Lunch Int'l LLC v. Nichols*,
  No. EDCV 06-1127-VAP, 2009 WL 10668457 (C.D. Cal. May 21, 2009) ............................ 3

*Kavky v. Herbalife Int'l of Amer.*,
  820 A.2d 677 (N.J. App. Div. 2003) ......................................................................................... 8

*Madison House, Ltd. v. Sotheby's Int'l Realty Affiliates*,
  No. C06-1054P, 2007 WL 564151 (W.D. Wash. Feb. 20, 2007) ............................................. 6

*McGowan v. Pillsbury Co.*,
  723 F. Supp. 530 (W.D. Wash. 1989) ....................................................................................... 6

*Mon-Shore Mgmt., Inc. v. Family Media, Inc.*,
  584 F. Supp. 186 (S.D.N.Y. 1984) ...................................................................................... 5, 10

*SEC v. Toomey*,
  866 F. Supp. 719 (S.D.N.Y. 1992) .......................................................................................... 10

*SEC v. Yorkville Advisors, LLC*,
  305 F. Supp. 3d 486 (S.D.N.Y. 2018) ....................................................................................... 2

*Stein v. Marquis Yachts, LLC*,
  No. 14-24756-CIV, 2015 WL 1288146 (S.D. Fla. Mar. 20, 2015) .......................................... 8

*Stocco v. Gemological Inst. of Am., Inc.*,
  975 F. Supp. 2d 1170 (S.D. Cal. 2013) ................................................................................... 2

## Statutes

Cal. Corp. Code § 31013 ............................................................................................................... 2

Cal. Corp. Code § 31105 ............................................................................................................... 2

Cal. Corp. Code § 31114 ............................................................................................................... 7

Cal. Corp. Code § 31119 ............................................................................................................... 7

Cal. Corp. Code § 31303 ............................................................................................................... 7

Haw. Rev. Stat. § 482E-3 .............................................................................................................. 7

Haw. Rev. Stat. § 482E-4 .............................................................................................................. 4

Haw. Rev. Stat. § 482E-10.5 ......................................................................................................... 7

Mich. Comp. Laws § 445.1504 ..................................................................................................... 3

Mich. Comp. Laws § 445.1507a .................................................................................................... 3

N.D. Cent. Code § 51-19-02 ......................................................................................................... 3

N.D. Cent. Code § 51-19-03 ......................................................................................................... 3

19 R.I. Gen. Laws 19-28.1-7 ......................................................................................................... 4

19 R.I. Gen. Laws § 19-28.1-4 ...................................................................................................... 4

Va. Code Ann. § 13.1-565 ............................................................................................................. 6

Va. Code Ann. § 13.1-571 ............................................................................................................. 6

## INTRODUCTION

Defendants Global Baristas U.S., LLC's and Global Baristas, LLC's (collectively "GB") opposition to Keurig's motion to dismiss relies on incorrect interpretations of the state statutes underlying GB's counterclaims and facts that are not alleged in GB's pleading. Indeed, if one were to follow GB's reasoning to its logical conclusion, every franchisor worldwide that does not explicitly exclude certain states from its franchise agreement would be subject to franchise laws in all 50 states even if the offer to franchise and the franchisee's business have absolutely no connection to those states. Such an interpretation of the law is contrary to the express terms of the state laws GB is relying on and would impose an undue burden on franchisors that would not serve the purpose of the state's franchise laws, which is to protect citizens and regulate business activities within those state's borders. Because GB has failed to allege facts that would state claims for relief under the explicit language in the state statutes it relies on, the Court should dismiss GB's first and second counterclaims pursuant to Rule 12(b)(6). Likewise, the Court should strike GB's second affirmative defense because it relies on the same incorrect interpretation of the law as GB's counterclaims and forcing Keurig to waste time and money to litigate this defense is prejudicial. GB's third counterclaim relies on the first two and therefore, the Court should dismiss it for failure to state a claim.

## ARGUMENT

**I.      GB'S FIRST COUNTERCLAIM FAILS TO STATE A CLAIM FOR RELIEF.**

    **A.      GB's First Counterclaim Relies On Inapplicable State Law.**

        1.      *California*

GB argues that California's Franchise Investment Law applies based on its incorrect interpretation of the statute and alleged facts that it did not plead. GB claims that the California statute "applies where the franchise business *will be* operated in California." (Dkt. No. 56 at 8.)

GB is incorrect. Instead, the statute states that an "[a]n offer or sale of a franchise is made in this state when [1] an offer to sell is made in this state, or [2] an offer to buy is accepted in this state, or, [3] *if the franchisee is domiciled in this state*, the franchised business is or will be operated in this state." Cal. Corp. Code § 31013(a) (emphasis added). Thus, in order to fall under the third basis, GB must **both** be domiciled in California **and** the franchised business will be operated in California. GB has not alleged either of these required facts in its amended counterclaims.[1] (*See* Dkt. No. 36 at 15-21.) Therefore, GB has failed to state a claim for relief under California law.

In addition, the exemption in California's law applies in this case. The California exemption provides that "[a]ny offer, sale, or other transfer of a franchise . . . to a resident of another state . . . shall be exempted . . . if all locations . . . are physically located outside this state." Cal. Corp. Code § 31105 (emphasis added). The pleaded facts establish only that GB is a Washington limited liability company with its principal place of business in Washington, and GB admits that it "never actually opened for business in California." (*See* Dkt. No. 1 ¶ 4; Dkt. No. 36 ¶ 4; Dkt. No. 56 at 8.) Because the exemption is clearly written to apply to out-of-state residents with locations outside California, it applies here and bars GB's claim.

Finally, GB's attempt to distinguish Keurig's supporting case law misses the mark. GB misconstrues the holding in *Stocco v. Gemological Institute of America, Inc.* and ignores the fact that the Court's decision that the parties' agreement was exempted under Section 31105 was based on the absence of any allegations that any transactions or distributions "are made from a location physically within California." 975 F. Supp. 2d 1170, 1183 (S.D. Cal. 2013). Likewise, in *It's Just Lunch Int'l LLC v. Nichols*, the Court found that Section 31105 barred the defendant's claim

---

[1] GB's attempt to introduce new facts in its brief should be ignored by the Court. *See, e.g.*, *SEC v. Yorkville Advisors, LLC*, 305 F. Supp. 3d 486, 531 (S.D.N.Y. 2018) (holding that "the SEC cannot now amend their complaint merely by raising new facts or theories in their briefs").

because "both franchises were located in Florida, not California." No. EDCV 06-1127-VAP, 2009 WL 10668457, at *13 (C.D. Cal. May 21, 2009). The same is true here—GB's counterclaims contain no allegations regarding sales, transactions, or distribution from a physical location in California, and therefore, the exemption in Section 31105 applies.

For these reasons, the Court should dismiss GB's claim under California law.

### 2. *Michigan, North Dakota, and Rhode Island*

With respect to Michigan and North Dakota, GB completely ignores the relevant statutory language, which is identical to Section 31013 of the California statute. *See* Mich. Comp. Laws § 445.1504, Sec. 4(2) ("An offer or sale of a franchise is made in this state when [1] an offer to sell is made in this state, or [2] an offer to buy is accepted in this state, or, [3] *if the franchisee is domiciled in this state*, the franchised business is or will be operated in this state." (emphasis added)); N.D. Cent. Code § 51-19-02(14)(b)(1) (same).[2] Again, GB relies on the third basis to claim it falls within the Michigan and North Dakota statutes. (*See* Dkt. No. 56 at 11, 13.) However, like the California statute, the third basis in the Michigan and North Dakota statutes require that GB *both* be domiciled in Michigan/North Dakota *and* the franchised business will be operated in Michigan/North Dakota. GB does not allege either of these required facts in its amended counterclaims, does not even attempt to argue that it can somehow claim to be domiciled in Michigan or North Dakota, and admits that it did not "open a physical location" in either state.

---

[2] As pointed out in Keurig's principal brief and contrary to GB's attempt to misconstrue these states' statutes, both require that an offer or sale of a franchise occur "in this state" for the statute's disclosure and registration requirements to attach. *See* Mich. Comp. Laws § 445.1507a, Sec. 7a(1) ("Prior to offering for sale or selling a franchise *in this state* . . . ." (emphasis added)); N.D. Cent. Code § 51-19-03 ("It is unlawful for any person to offer or sell any franchise *in this state* . . . ." (emphasis added)).

(*See* Dkt. No. 36 at 15-21; Dkt. No. 56 at 10-15.)  Accordingly, GB has not, and cannot, state a claim for relief under Michigan or North Dakota law.

The Rhode Island statute is similar and states that, in addition to offers made or accepted in the state, "[t]his act also applies to a franchise offered or sold outside of this state if it is offered or sold to a ***resident of this state and*** is to be operated in this state."  19 R.I. Gen. Laws § 19-28.1-4 (emphasis added).  Thus, to fall within this provision, GB must be ***both*** a resident of Rhode Island ***and*** have offered or sold a franchise to be operated in Rhode Island.  GB does not allege either of these required facts in its amended counterclaims, does not even attempt to argue that it can somehow claim to be a Rhode Island resident, and admits that it "did not open a physical location" in Rhode Island.[3]  (*See* Dkt. No. 36 at 15-21; Dkt. No. 56 at 12-15.)  Therefore, GB has not, and cannot, state a claim for relief under Rhode Island law.

For these reasons, the Court should dismiss GB's claims under Michigan, North Dakota, and Rhode Island law.

3. *Hawaii*

Hawaii's Franchise Investment Law explicitly does not apply to an "offer or sale to a franchisee or prospective franchisee where the franchisee or prospective franchisee is not domiciled in this State and where the franchise business will not be operated in this State."  Haw. Rev. Stat. § 482E-4(a)(4).  GB's amended counterclaim does not, and cannot, allege that GB is domiciled in Hawaii or operated any business in Hawaii.  (*See* Dkt. No. 36 at 15-21.)  Indeed, GB admits that it "never actually opened a store in Hawaii."  (Dkt. No. 56 at 16.)

---

[3] For the same reasons, and as explained in Keurig's principal brief, GB also falls within Rhode Island's out-of-state exemption.  *See* 19 R.I. Gen. Laws 19-28.1-7.

Instead, GB advocates for a strained construction of the Hawaii statute to try to save its claim. Yet, GB does not cite anything to support its overly broad interpretation that would require the statute's requirements to be imposed on every franchise in the world that is not specifically prevented from operating in Hawaii. Such an interpretation is absurd and would impose an undue burden on franchisors worldwide. *See, e.g.*, *Mon-Shore Mgmt., Inc. v. Family Media, Inc.*, 584 F. Supp. 186, 191 (S.D.N.Y. 1984) (explaining that a state franchise act "cannot have any effect whatsoever on the nationwide marketing of franchises if the franchisor elects to conduct his activities outside of this State and with non-residents"). GB has not pled any facts that would support the conclusion that it is not covered by the exemption to the Hawaii statute and therefore, it has failed to state a claim for relief. Accordingly, the Court should dismiss GB's claim under Hawaii law.

    4. *Virginia*

The parties agree that in order for the Virginia statute to apply, "the business transacted under the franchise agreement [must] have a nexus to the Commonwealth." *Crone v. Richmond Newspapers, Inc.*, 384 S.E.2d 77, 80-81 (Va. 1989). However, GB ignores the rest of the Court's opinion in the governing *Crone* case, which requires that "the party seeking coverage of the Act must show only a business connection or link with this State." *Id.* at 81. In *Crone*, the required nexus was present because the distributor operated within Virginia even though it did not have a physical location there. *See id.* In sharp contrast, GB does not allege any business connection or link with Virginia in its amended counterclaims and admits that it "had not yet opened any physical location in Virginia." (*See* Dkt. No. 36 at 15-21; Dkt. No. 56 at 17.) Therefore, GB has not, and cannot, state a claim for relief under Virginia law.

Moreover, GB's arguments with respect to the availability of civil remedies under the Virginia statute lack merit. GB ignores that it cannot declare the alleged franchise void because

more than 90 days have passed since the execution of the Trademark License Agreement in 2014. *See* Va. Code Ann. §§ 13.1-571; 13.1-565(1), (3); (Dkt. No. 1-1). GB also ignores the fact that its amended counterclaims contain no allegations that Keurig's termination of the Trademark License Agreement violated Section 13.1-564 of the Virginia statute. (*See* Dkt. No. 36 at 15-21.) Accordingly, GB cannot rely on such an argument in its brief to try to save its claim. The unavailability of civil remedies for the alleged violation of the Virginia statute further supports dismissal of GB's claim under Virginia law.

Because GB has failed to state a claim for relief under California, Michigan, North Dakota, Rhode Island, Hawaii, and Virginia law, the Court should dismiss GB's first counterclaim based on these states' franchise laws.

**B. GB's First Counterclaim Is Also Time-Barred Under The Correct Statutes Of Limitation In Washington, California, And Hawaii.**

GB completely ignores the Washington case cited by Keurig in its principal brief that held that Washington's "catch-all" two-year statute of limitations applies to GB's franchise claim and "runs from the date of execution" of the alleged franchise agreement. (*See* Dkt. No. 48 at 10 (citing *Madison House, Ltd. v. Sotheby's Int'l Realty Affiliates*, No. C06-1054P, 2007 WL 564151, at *1-2 (W.D. Wash. Feb. 20, 2007)).) Indeed, the Court in *Madison House* declined to follow the case GB relies on to argue that a six-year statute of limitations should apply. 2007 WL 564151, at *1 (declining to follow *McGowan v. Pillsbury Co.*, 723 F. Supp. 530 (W.D. Wash. 1989), because "the failure to register claim is not an action arising from a written contract and the logic of applying a contract statute of limitations to a non-contract claim is not apparent."). Because the two-year statute of limitations applies, GB's claim under Washington law is time-barred because it was brought more than two-years after the execution of the Trademark License Agreement in

July 2014. (*See* Dkt. No. 1-1.) Accordingly, for this reason and those set forth above, the Court should dismiss GB's first counterclaim in its entirety.

Likewise, the one-year California and two-year Hawaii statutes of limitations apply in this case because GB knew of the facts constituting the alleged violations at the time the Trademark License Agreement was executed. *See* Cal. Corp. Code § 31303; Haw. Rev. Stat. § 482E-10.5(b). GB's claims based on an alleged failure to provide the required documentation, which under both states' statutes was due before the alleged sale of the franchise, are time-barred because GB cannot dispute that it knew it had not received the franchise documents when it entered into the Trademark License Agreement in July 2014. *See* Cal. Corp. Code §§ 31114, 31119; Haw. Rev. Stat. § 482E-3(a).[4] Similarly, at least one California court has found that failure to register claims are governed by the one-year statute of limitations. *See BigFix Asia PTE LTD v. BigFix, Inc.*, No. C 08-4023, 2009 WL 10692076, at *3 (N.D. Cal. Feb. 2, 2009). The same logic should apply under Hawaii law. This further supports dismissal of GB's claims under California and Hawaii law.

## II.     GB'S SECOND COUNTERCLAIM FAILS TO STATE A CLAIM FOR RELIEF.

### A.     Florida's Deceptive And Unfair Trade Practices Act Does Not Apply.

GB does not address the fact that the FDUTPA requires that the alleged unfair or deceptive trade practices be based on actions that occurred in Florida. Instead, GB focuses on the applicability of the FDUTPA to non-residents of Florida. (*See* Dkt. No. 56 at 21-22.) The cases

---

[4] The cases GB relies on do not change these facts or support its position. In *Elhilu v. Quizno's Franchising Co., LLC*, the issue was not whether the franchisee received the required franchise documents prior to the sale. No. 2:06-cv-07855, 2008 WL 11338130 (C.D. Cal. Apr. 3, 2008). Likewise, in *Degla Grp. for Invs., Inc. v. BoConcept USA, Inc.*, the issue was whether the franchisee should have known whether it had the *registered* copy of the circular, not whether it received any documentation at all. No. 2:09-cv-05278, 2009 WL 10673164 (C.D. Cal. Oct. 15, 2009).

GB relies on, which relate to the statute's application to non-residents, do not change the fact that the FDUTPA "does not apply to actions that occurred outside of Florida." *Stein v. Marquis Yachts, LLC*, No. 14-24756-CIV, 2015 WL 1288146, at *6 (S.D. Fla. Mar. 20, 2015).[5]  GB has not alleged that Keurig engaged in unfair or deceptive trade practices in Florida.  (*See* Dkt. No. 36 at 15-21.) Accordingly, the FDUTPA is inapplicable and the Court should dismiss GB's claim based on Florida law for failure to state a claim for relief.

### B.     New Jersey's Consumer Frauds Act Does Not Apply.

GB acknowledges that federal courts have repeatedly found that the NJCFA does not apply to the sale of franchises.  (Dkt. No. 56 at 23.)  Nevertheless, GB misconstrues the holding of a New Jersey state court case, *Kavky v. Herbalife Int'l of Amer.*, 820 A.2d 677 (N.J. App. Div. 2003), to argue that the NJCFA should apply to the sale of franchises. (*See* Dkt. No. 56 at 23.)  However, the Court in *Kavky* specifically stated that its reasoning, which focused on the need to protect citizens from mass public frauds, "is not to say that we disagree with the result reached in *J & R*, but that is only because it appears to have involved a substantial and complex commercial transaction, which likely fell within the Franchise Practices Act." *Kavky*, 820 A.2d at 679.  Thus, contrary to GB's argument, *Kavky* does not stand for the proposition that the NJCFA should apply to a franchise like the one alleged in this case and the holding in *J & R* is still good law.  In fact, *J & R*'s holding was affirmed by the Third Circuit after the *Kavky* decision.  *See A.H. Meyers & Co. v. CAN Ins. Co.*, 88 F. App'x 495, 499 (3d Cir. 2004).  For this reason alone, the Court should dismiss GB's claim under New Jersey law for failure to state a claim for relief.

---

[5] At most, one of the cases GB relies on, *Barnext Offshore, Ltd. v. Ferretti Grp. USA, Inc.*, held that the offending conduct does not need to occur "***entirely*** within Florida." No. 10-23869-CIV, 2012 WL 1570057, at *6 (S.D. Fla. May 12, 2012) (emphasis added).  It did not find that the FDUTPA applies when ***none*** of the wrongful actions occurred in Florida.

Furthermore, GB essentially ignores the fact that the NJCFA requires that New Jersey has "some qualitative connection to the allegation or to the parties." *Blackhall v. Access Grp.*, No. 2:10-00508, 2010 WL 3810864, at * 5 (D.N.J. Sept. 22, 2010), and that GB failed to plead any such connection. (*See* Dkt. No. 36 at 15-21.) This is another reason for the Court to dismiss GB's claim.

Because GB has failed to state a claim for relief under Florida and New Jersey law, the Court should dismiss GB's second counterclaim in its entirety.

### III. GB'S THIRD COUNTERCLAIM IS BASED ON THE FIRST TWO AND THEREFORE FAILS TO STATE A CLAIM FOR RELIEF.

The parties agree that GB's third counterclaim relies entirely on the viability of the first two. Because, for the reasons discussed above and in Keurig's principal brief, GB's first two counterclaims do not state claims for relief, its third counterclaim also fails to do so. Thus, the Court should dismiss GB's third counterclaim.

### IV. THE COURT SHOULD STRIKE GB'S SECOND AFFIRMATIVE DEFENSE.

The Court should strike GB's second affirmative defense because, as pointed out in Keurig's principal brief, it relies on state laws that require some connection to the state, GB has not alleged any such connection, and no such connection exist. (*See* Dkt. No. 48 at 13-14; Dkt. No. 36 at 15-21.) Contrary to GB's argument, Keurig already explained that the Rule 12(f) standard is satisfied in this case because, for the aforementioned reasons, there are no questions of law or fact that would allow this defense to succeed and Keurig will be prejudiced by its inclusion in this case. (*See* Dkt. No. 48 at 14-15.) GB is relying solely on a worldwide trademark license even though it does not reside and did not do business in all but one of the states whose laws it is relying on. (*See* Dkt. No. 36; Dkt. No. 56.) A nationwide license without any actual connection to the states at issue is insufficient to subject Keurig to those state's franchise laws. *See, e.g.*, *Mon-*

*Shore Mgmt.*, 584 F. Supp. at 191.  The prejudice to Keurig is self-evident—the increased time and expense of being forced to litigate a defense that is insufficient as a matter of law.  *See, e.g.*, *SEC v. Toomey*, 866 F. Supp. 719, 725 (S.D.N.Y. 1992) ("Including this defense will only increase the duration and expense of trial, which would prejudice plaintiff."); *Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 430 (S.D.N.Y. 2010) (same).  Accordingly, the Court should strike GB's second affirmative defense.

## CONCLUSION

For the foregoing reasons, and those set forth in Keurig's principal brief, Keurig respectfully requests that the Court grant its motion to dismiss.

Dated:  New York, NY
        July 12, 2018

Respectfully submitted,

By: _____
Russell D. Morris
**THE LAW OFFICE OF RUSSELL D. MORRIS PLLC**
545 Fifth Avenue, Suite 640
New York, New York 10017
Tel:  (212) 380-1619
rmorris@russellmorrislaw.com

and

Cynthia A. Moyer (admitted *pro hac vice*)
Laura L. Myers (admitted *pro hac vice*)
Barbara Marchevsky (admitted *pro hac vice*)
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, Minnesota 55402-1425
Telephone:  (612) 492-7000
Facsimile:  (612) 492-7077
E-mail:  cmoyer@fredlaw.com
lmyers@fredlaw.com
bmarchevsky@fredlaw.com

*Attorneys for Plaintiff Keurig Green Mountain, Inc.*

64341302