```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:_____          │
│ DATE FILED: 10/10/18             │
└─────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
KEURIG GREEN MOUNTAIN, INC., a
Delaware corporation,

                          Plaintiff,

              -against-                                    18-cv-0095 (LAK)


GLOBAL BARSTAS U.S., LLC, a
Washington limited liability company, and
GLOBAL BARISTAS, LLC, a Washington
limited liability corporation,

                          Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## MEMORANDUM OPINION

Appearances:

        Russell D. Morris
        THE LAW OFFICE OF RUSSELL D. MORRIS PLLC

        Barbara Marchevsky
        Cynthia A. Moyer
        Laura L. Myers
        FREDRIKSON & BYRON, P.A.

        *Attorneys for Plaintiff*

        Mackenzie Dimitri
        Michael Einbinder
        EINBINDER & DUNN, LLP
        *Attorneys for Defendants*

LEWIS A. KAPLAN, *District Judge.*

This action is before the Court on plaintiff's motion to dismiss defendants' counterclaims and motion to strike defendants' second affirmative defense. For the reasons stated below the motion to dismiss is granted and the motion to strike is denied.

## *Factual Background*

Plaintiff is a coffee company that markets "K-CUP" pods that are used with Keurig brewers.[1] Plaintiff's products are marketed and sold through distributors, retail sellers, and direct channels.[2] Keurig is a Delaware corporation and its principal place of business is in Vermont.[3]

Defendants operate coffee shops and are incorporated and headquartered in Washington.[4] On July 21, 2014 the parties entered into a trademark license agreement (the "Agreement"), granting Global Baristas an exclusive, non-transferable license to use the "TULLY'S" trademarks to sell coffee and retail products at licensed stores.[5] The Agreement places a number of restrictions upon defendants' use of the marks including a requirement that defendants obtain plaintiff's approval for any promotional or advertising material defendants wish to use that bears the

---

[1]  Compl. [DI 1] ¶ 2.

[2]  *Id.*

[3]  *Id.* ¶ 3.

[4]  *Id.* ¶ 1, 4.

[5]  *Id.* ¶ 8, 13.

TULLY's marks.[6] The Agreement allows either party to terminate it upon written notice to the other party of any breach of a material obligation, which the breaching party fails to cure within 30 days of receiving such notice.[7] The Agreement is governed by the substantive law of Delaware and establishes New York as the forum for any litigation.[8]

Plaintiff asserts that defendants breached the Agreement by, among other things, failing to pay annual royalty fees to Keurig[9] and using advertising material that Keurig never approved.[10] Keurig alleges that it sent defendants a "formal notice of breach and demand for payment" on October 27, 2017 and that defendants failed to cure the breach within thirty days, resulting in the automatic termination of the Agreement on December 1, 2017.[11] Keurig brings claims for injunctive relief to stop defendants from using TULLY'S marks following the alleged termination of the Agreement,[12] and for damages under the Lanham Act, Delaware law, and the common law.[13]

---

[6] Id. ¶ 20.

[7] Compl. Ex. A [DI 1] at 9.

[8] Compl. Ex. A [DI 1] at 16.

[9] Compl. [DI 1] ¶ 27.

[10] Id. ¶ 31.

[11] Id. ¶ 28.

[12] The parties entered into a consent injunction on September 20, 2018. DI 60.

[13] Compl. ¶ 37-62.

Defendants assert four counterclaims and several affirmative defenses. Keurig moves to dismiss the first three counterclaims and to strike defendants' second affirmative defense.

*Motion to Dismiss*

Defendants' first counterclaim alleges a failure to register and/or disclose a franchise in violation of multiple state statutes.[14] The second alleges violations of the trade protection statutes of New Jersey and Florida.[15] The third alleges that the Agreement is illegal, null, void, and unenforceable based on the aforementioned violations of state law.[16] Defendants' second affirmative defense is styled similarly to the third counterclaim and alleges that the Agreement is unenforceable and void because of alleged violations of state statutes, among other reasons.[17]

Plaintiff moves to dismiss the first and second counterclaims on the grounds that (1) the California, Hawaii, Michigan, North Dakota, Rhode Island, and Virginia franchise laws and Florida and New Jersey trade protection statutes do not apply to the transaction that resulted in the Agreement, and (2) the statute of limitations has run on the defendants' claims under California, Hawaii, and Washington law. It moves to dismiss the third counterclaim and to strike the second affirmative defense based on the insufficiency of the first two counterclaims.

---

[14] Def. Ans. [DI 36] at 16.

[15] *Id.* at 18.

[16] *Id.* at 20-21.

[17] *Id.* at 12.

*Counterclaim I: Violation of State Franchise Laws*

    *A.*    *Claims under California, Hawaii, Michigan, North Dakota, Rhode Island, and Virginia Law*

Defendants' first counterclaim alleges violations of multiple state statutes related to franchise registration. Their argument boils down to an assertion that the Agreement is not limited to certain states but instead granted a license to use the trademarks in "every state in the United States."[18] According to defendants, it is of no moment that they never operated in any state but Washington because they were granted the right to operate in each of the states listed above and therefore are entitled to the protection of their franchise laws. The argument fails because each statute requires some concrete connection to the state before its protections attach to a transaction. The Court need not reach the question of whether the claims under Hawaii and California law are time-barred because the Court finds that the statutes do not apply to the transaction in the first instance.

    *i.*    *California*

The California Franchise Investment Law makes it "unlawful for any person to offer or sell any franchise in this state unless the offer of the franchise has been registered under this part

---

[18] Def. Br. [DI 56] at 2. Indeed, the Agreement granted a license to use the marks in connection with the retail sale of licensed products at licensed retail stores and a license to operate those stores anywhere in the world other than Japan. *See* Compl. Ex. A [DI 1] at 3.

or exempted under Chapter 1 (commencing with Section 31100) of this part."[19] An offer or sale of a franchise is "made in this state when an offer to sell is made in this state, or an offer to buy is accepted in this state, or, if the franchisee is domiciled in this state, the franchised business is or will be operated in this state."[20] Offers, sales, or transfers of franchises are exempt if the offeree, buyer, or transferee is a non-resident and "all locations from which sales, leases or other transactions between the franchised business and its customers are made, or goods or services are distributed, are physically located outside this state."[21]

Defendants do not contend that an offer to sell or buy was made or accepted in California. Rather, their argument hinges on their claim that the alleged franchise they purchased from Keurig would be operated in California. Even if defendants were to operate a franchise in California at some point in the future, that would not be enough. The statute requires the franchisee to be domiciled in the state in order for its protections to extend to franchised businesses that "will be operated" in this state.[22] Defendants therefore have failed to state a claim under the California Franchise Investment Law.

*ii.    Michigan*

The Michigan Franchise Investment Law is similar to the California statute and

---

[19]

Cal. Corp. Code § 31110 (2017).

[20]

*Id.* at § 31013(a).

[21]

*Id.* at § 31105.

[22]

*Id.* at § 31013(a).

requires registration and disclosure for offers or sales of franchises made in the state. Under the Michigan statute, an "offer or sale of a franchise is made in this state when an offer to sell is made in this state, or an offer to buy is accepted in this state, or, if the franchisee is domiciled in this state, the franchised business is or will be operated in this state.[23] Defendants do not argue that the offer to sell or buy occurred in Michigan. As defendants are not domiciled in Michigan, the law does not apply.

### iii. *North Dakota*

The North Dakota statute states that "it is unlawful for any person to offer or sell any franchise in this state unless the offer of the franchise has been registered under this chapter or exempted."[24] An offer or sale of a franchise is made in North Dakota "when an offer to sell is made in this state or an offer to buy is accepted in this state, or, if the franchisee is domiciled in this state, the franchised business is or will be operated in this state."[25] The statute does not apply because defendants do not argue that the offer to sell or buy occurred in North Dakota nor are they domiciled in North Dakota.

### iv. *Rhode Island*

Rhode Island's Franchise Investment Act, similar to those above, does not apply to

---

23

Mich. Compiled Laws § 445.1504(2) (2017).

24

N.D. Century Code § 51-19-03 (2017).

25

*Id.* at § 51-19-02.

offers or sales of franchises outside the state if the offeree or purchaser is not a resident of Rhode Island.[26] Defendants are not Rhode Island residents, thus the Act does not apply.

### v. Hawaii

Hawaii's Franchise Investment Law exempts any "offer or sale to a franchisee or prospective franchisee where the franchisee or prospective franchisee is not domiciled in [Hawaii] and where the franchise business will not be operated in [Hawaii]."[27] Defendants are not domiciled in Hawaii. The statute does not apply.

### vi. Virginia

Virginia's Retail Franchising Act applies "only to a franchise the performance of which contemplates or requires the franchisee to establish or maintain a place of business within the Commonwealth of Virginia."[28] The Supreme Court of Virginia has interpreted this provision to require "the business transacted under the franchise agreement to have a nexus to the Commonwealth."[29] "The proviso merely records the intention of the General Assembly to legislate constitutionally by regulating business within the State in a field which often involves transactions

---

[26] R.I. Gen. Laws § 19-28.1-4 (2017) ("This act also applies to a franchise offered or sold outside this state if it is offered or sold to a resident of this state and is to be operated in this state.").

[27] Haw. Revised Statutes § 482E-4(a)(4) (2016).

[28] Code of Va. § 13.1-559(B) (2017).

[29] *Crone v. Richmond Newspapers, Inc.*, 384 S.E. 2d 77, 80-81 (Va. S. Ct. 1989).

in interstate commerce."[30] There need not be a brick and mortar "site where business is transacted" in order for there to be a nexus to the Commonwealth; there need only be a "connection or link with this State."[31]

Defendants have not alleged any link to the state of Virginia. The sweeping assertion that the Agreement sold defendants the right to operate a franchise anywhere in the United States cannot establish a nexus to Virginia. Indeed, that is the type of activity the Act was certain to preclude to ensure that the legislation was constitutional.[32] Thus, defendants have failed to state a claim under Virginia's Retail Franchising Act. Because the Act does not apply, the Court finds no need to address the parties' arguments related to the availability of civil remedies under the Act.

B.    *Claim under the Washington Franchise Investment Act*

The parties do not dispute that the Washington Franchise Investment Act ("WFIPA") applies to the transaction. At issue is whether the statute of limitations has run on defendants' claim under the Act.

The Court first must determine which state's law supplies the statute of limitations. A federal court sitting in diversity (or exercising diversity jurisdiction over state law claims)

---

[30]    *Id.*, at 81.

[31]    *Id.*

[32]    *See id.*

applies the forum state's statute of limitations.[33] The rule does not change in light of a choice of law provision like the one in the Agreement.[34] Under New York law, a choice of law provision typically applies to only substantive issues and not to statutes of limitations, which are considered procedural.[35] New York law therefore determines the statute of limitations applicable to this claim.

Section 202 of the New York Civil Practice Law and Rules ("CPLR") provides that "an action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued."[36] The import of Section 202 "is that it requires non-resident plaintiffs to file claims by the shorter of the statute of limitations of either (a) New York or (b) the jurisdiction where the claim accrued."[37] If the injury is an economic one, the cause of action typically accrues "where the plaintiff resides and sustains the economic impact of the loss."[38]

Global Baristas' cause of action and alleged injury accrued in Washington because defendants are domiciled in Washington, the alleged failure to register occurred in Washington, and

---

[33]
    *2002 Lawernce R. Buchalter Alaska Trust v. Philadelphia Fin. Life Assurance Co.*, 96 F. Supp. 3d 182, 200 (S.D.N.Y. 2015).

[34]
    *Id.* at 202 n.8.

[35]
    *Id.*

[36]
    N.Y. CPLR § 202 (2017).

[37]
    *Lawrence R. Buchalter Alaska Trust*, 96 F. Supp. 3d at 201.

[38]
    *Muto v. CBS Corp.*, 668 F.3d 53, 60 (2d Cir. 2012) (*quoting Global Fin. Corp. v. Triarc Corp.*, 93 N.Y. 2d 525, 530 (1999)).

Washington is where Global Baristas would sustain the impact of any loss. To survive the motion to dismiss, defendants' counterclaims therefore must be within both New York and Washington's statutes of limitations.

WFIPA does not contain a specific statute of limitations. The Revised Code of Washington ("RCW") § 4.16.080 establishes a three-year limitations period for actions for fraud.[39] Section 4.16.040 establishes a six-year limitations period for actions arising out of a written contract.[40] All actions for relief not otherwise provided for must be commenced within two years after the cause of action accrued.[41]

Under New York law, there is a six-year limitations period for actions related to contracts, fraud, and "action[s] for which no limitation is specifically prescribed by law."[42] As the Washington limitations periods are shorter than or equal to the New York limitations period, the RCW provisions control. The question is which provision.

A court in the Western District of Washington that confronted this issue found that a "failure to register claim is not an action arising from a written contract and the logic of applying a contract statute of limitations to a non-contract claim is not apparent."[43] The court applied the two-

---

[39] RCW § 4.16.080.

[40] RCW § 4.16.040.

[41] RCW § 4.16.130.

[42] N.Y. C.P.L.R. § 213.

[43] *Madison House, Ltd. v. Sotheby's Int'l Realty Affiliates*, No. C06-1054P, 2007 WL 564151 at *1 (W.D. Wash. 2007).

year limitations period to the "registration cause of action" because it "[arose] from a failure to comply with a statutory requirement, and nowhere [did] Plaintiffs allege any contractual violations."[44] A court in this district held similarly, finding that the two-year catch-all limitations period applied to "non-fraud-based WFIPA claims."[45] Additionally, the discovery rule could not help the plaintiffs because registration information is commonly and publicly available.[46] A failure to register claim therefore accrues on the date of execution of the franchise agreement.[47]

Defendants urge the Court to rely on an older Western District of Washington case that reached a different conclusion. In *McGowan v. Pillsbury Co.*,[48] the court found that both the three-year limitations period for fraud and oral contracts and the six-year limitations period for written contracts controlled. The court seemed to peg its brief analysis to the confluence of plaintiffs' multiple claims, including one for fraud and one for breach of [a written] contract, and noted that the "'catch-all' two-year statute applies only where there is no other applicable statute of limitations."[49] The court chose to take the complaint as a whole when determining a limitations period, rather than analyzing each claim individually.

---

[44]     *Id.*

[45]     *JM Vidal, Inc. v. Texdis USA, Inc.*, 764 F. Supp. 2d 599, 611 (S.D.N.Y. 2011).

[46]     *Id.*, at 611-12

[47]     *Id.*, at 612.

[48]     723 F. Supp. 530 (W.D. Wash. 1989).

[49]     *Id.*, at 537.

The court in *JM Vidal* rejected this approach, taking each claim under WFIPA individually and finding those that were non-fraud-based barred and those that were fraud-based timely.[50] The result here is the same regardless of the approach. Defendants assert three counterclaims, one for failure to register, one for violations of state trade protection statutes, and one for declaratory judgment. None sounds in fraud[51] or breach of contract. Under either the *McGowan* approach or *JM Vidal* approach, the two-year statute of limitations therefore applies. Any attempt to bootstrap a limitations period specific to one of the other state statutes to the WFIPA claim will fail because the defendants have failed to state a claim under those other statutes and there is no reason to read *McGowan* to suggest that a party may make an otherwise time-barred claim timely simply by asserting a groundless claim and applying the applicable statute of limitations from that claim to the complaint as a whole. Thus, defendants' claim under WFIPA is time barred.

*Counterclaim II: Violation of Florida and New Jersey Trade Protection Statutes*

The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or

---

[50]

*JM Vidal*, 764 F. Supp. at 611-12.

[51]

The fact that the New Jersey trade protection statute underlying Counterclaim Two is titled the "New Jersey Consumer Frauds Act" does not automatically render the claim one for fraud. The pleadings make clear that the alleged unlawful conduct under the Act is the failure to "furnish a prospective franchisee . . . with a copy of the franchisor's current disclosure document . . . at least 14 calendar days before the prospective franchisee signs a binding agreement with, or makes any payment to, the franchisor or an affiliate in connection with the proposed franchise sale." Def. Ans. [DI 36] at 19.

practices in the conduct of any trade or commerce."[52]  Though the Act has no specific geographic limitations, Florida courts have held that FDUPTA "seeks to prohibit unfair, deceptive and/or unconscionable practices which have transpired within the territorial boundaries of this state."[53]  No act has taken place within the territorial boundaries of Florida.  Keurig is not domiciled or headquartered in Florida.  The mere possibility that some act may take place in Florida at some unknown point in the future is not enough to render the Act applicable.  Defendants have failed to state a claim under FDUTPA.

The New Jersey Consumer Frauds Act makes it unlawful to use "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression or omission, of any material fact with intent that others rely upon such concealment, suppression or omission."[54]  The Act applies to all sales "made by New Jersey sellers" regardless of the buyer's state of residence.[55]  Contrary to defendants' assertions, the Act

---

[52]

Fl. Statutes § 501.204 (2018).

[53]

*Millennium Communications & Fulfillment, Inc. v. Office of Attorney General, Dept. Of Legal Affairs, State of Fl.*, 761 So. 2d 1256, 1262 (Fla. 3d DCA 2000); *see also Renaissance Cruises, Inc. v. Glassman*, 738 So. 2d 436 (Fla. 4th DCA 1999) (holding that certification of a class that included a majority of non-residents was appropriate because there were significant connections to Florida, including the appellant-defendant's principal place of business, and location from which it controlled and carried out its U.S. business operations).

[54]

N.J. Statutes Ann. § 56:8-2 (2016).

[55]

*International Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 384 N.J. Super. 275, 288 (App. Div. 2006), *reversed on other grounds*, 192 N.J. 372 (2007); *see also Boyes v. Greenwich Boat Works, Inc.*, 27 F. Supp. 2d 543, 547 (D.N.J. 1998) (finding that New Jersey "has a powerful incentive to insure that local merchants deal fairly with citizens of other states and countries").

does not have blanket extraterritorial effect but requires a "qualitative connection" between New Jersey and the "allegation or [] the parties."[56] Defendants have alleged no connection to New Jersey that can be characterized as anything more than hypothetical. Defendants fail to state a claim under New Jersey law.

*Counterclaim III: Declaratory Judgment*

Defendants' third claim alleges that the Agreement is illegal, null, void, and unenforceable because of the alleged violations of state law discussed in the foregoing paragraphs. Because defendants have failed to state a claim based on the state statutes, defendants have failed also to allege facts that, if true, would state a claim to relief that is plausible on its face.

*Motion to Strike Defendants' Second Affirmative Defense*

Keurig moves to strike defendants' second affirmative defense, which asserts the following:

"The Trademark License Agreement (and any other contracts) referenced by Plaintiff in the Complaint is/are unenforceable and void because it violates pubic policy, is per se illegal, and because Plaintiff violated the law when presenting the contract to Global Baristas, LLC, including the laws governing the sale of franchises in California, Hawaii, Illinois, Indiana, Maryland, Michigan, Minnesota, New York, Virginia, Washington, Wisconsin, North Dakota, South Dakota, Rhode Island,

---

[56] *Blackhall v. Access Group*, No. 10-cv-0508, 2010 WL 3810864 at *5 (D.N.J. 2010)

Florida, New Jersey, Connecticut, and Oregon."[57]

A court may "strike from a pleading an insufficient defense" on a party's motion.[58] It is "well-established in this Circuit that 'a motion to strike an affirmative defense under Rule 12(f) [] for legal insufficiency is not favored.'"[59] A motion to strike can be granted only if (1) "it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense," (2) granting the motion would not require the determination of disputed and substantial questions of law, and (3) the plaintiff would be "prejudiced by the inclusion of the defense."[60] Courts in this district have held that the "increased time and expense of trial may constitute sufficient prejudice to warrant granting a motion to strike."[61] However, "mere assertions by the moving party that he is prejudiced are insufficient."[62]

Keurig has not met its burden on prong one. Notwithstanding the Court's conclusion that defendants failed to state a claim under various state laws, Keurig has not completely and certainly foreclosed the possibility that defendants could prove that the Agreement is unenforceable

---

[57]

Def. Ans. [DI 36] at 12.

[58]

Fed. R. Civ. P. 12(f).

[59]

*Estee Lauder, Inc. v. Fragrance Counter, Inc.*, 189 F.R.D. 269, 271 (S.D.N.Y. 1999) (*quoting Wiliam Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984), vacated on other grounds, 478 U.S. 1015 (1986)).

[60]

*Estee Lauder*, 189 F.R.D. at 271-72.

[61]

*Cnty. Vanlines Inc. v. Experian Info. Solutions, Inc.*, 205 F.R.D. 148, 153 (S.D.N.Y. 2002) (*quoting SEC v. Toomey*, 866 F. Supp. 719, 722 (S.D.N.Y. 1992)).

[62]

*Cnty. Vanlines*, 205 F.R.D. at 153.

and void because it violated public policy and Washington law at the time it was made. Moreover, granting the plaintiff's motion to strike this claim would require the Court to resolve disputed questions of law, including whether statutes of limitations apply to affirmative defenses (and how a choice of law analysis might affect that determination). Finally, the Court finds plaintiff's assertions of prejudice superficial.[63] Plaintiff's motion to strike the second affirmative defense is denied because Keurig has not met its burden.

*Conclusion*

Plaintiff's motion [DI 47] to dismiss defendants' counterclaims and to strike their second affirmative defense is granted to the extent that Counterclaims One, Two, and Three are dismissed. It is denied in all other respects.

SO ORDERED.

Dated:          October 10, 2018

_____
Lewis A. Kaplan.
United States District Judge

---

[63] Plaintiff's assertions of prejudice are limited to a mention of the word "prejudice." Pl. Br. [DI 48] at 15. Plaintiff's attempt to bolster its claim of prejudice in its Reply is equally unconvincing as it is limited to a recital of the language in *Toomey* recognizing that time and expense can constitute prejudice. DI 57, at 10.